## SUPREME COURT.

THE PEOPLE *ex rel.* LUCIUS A. HOVEY and LUCIUS A. HOVEY agt. ORSON AMES.

By the statute of 1847 (*Session Laws* 1847, *ch.* 498, which is constitutional) the legislature provided that the boards of supervisors might limit the number of county *superintendents of the poor* to *one*, and that when no resolution to that effect was passed, the number should be *three*. If, therefore, a board of supervisors pass a resolution, under this statute, declaring that thereafter there shall be but *one* superintendent of the poor for the county (there being three at the time), they have no power thereafter, by resolution or otherwise, to declare that thereafter there shall be *three* such superintendents elected for the county. They have power only to *reduce* the number, none to *increase* it after it is reduced.

If under a resolution to restore the number from one to three, an election is had, and three candidates are voted for, the election is void, because the resolution authorizing it is a *nullity*.

And when but *one* person can be elected to an office, and *three* persons are named on the same ballot, the ballot is void.

*General Term, Syracuse, October, 1860.*

*Present*, ALLEN, MULLIN *and* MORGAN, *Justices*.

THIS is an action brought by the attorney-general in the nature of *quo warranto*, for the purpose of obtaining a judgment ousting the defendant, Orson Ames, from the office of county superintendent of the poor, in and for the county of Oswego, and also declaring the relator, Lucius A. Hovey, entitled thereto. The action was commenced by the service on the defendant the usual summons and complaint. The defendant answered the complaint, denying each and every allegation therein contained, and pleading special matter. No question arises upon the pleadings. The cause came on for trial at the circuit court, held in and for the county of Oswego, on the 3d Monday of May, 1860, at the court house in the city of Oswego, before the Hon. W. F. ALLEN, justice of the supreme court, and a jury. The facts of the case were admitted by the counsel of the respective parties to be as follows:

Previous to 1855 there had been elected within the county of Oswego three superintendents of the poor, whose respective terms of office had been determined by lot by the clerk of said county. At the annual session of the board of supervisors of said county, held on the 30th day of November, 1855, at Pulaski, in said county, the following resolution was duly adopted by said board, viz.: "*Resolved*, And be it hereby enacted, that there shall be but one superintendent of the poor for the county of Oswego, and that in accordance with an act passed December 16th, 1847, there shall not be hereafter elected a superintendent of the poor until the general election, to be held in the year 1858, unless such office should be vacated." At the annual session of said board, held November 24, 1857, at Fulton, in said county, the following proceedings were had, viz.:

Mr. Hill, a member of said board, offered the following resolution:

" *Resolved,* That the number of superintendents of the poor for this county, and hereafter to be elected, be and is hereby fixed at two.

" *Resolved,* That a copy of the foregoing resolution, duly authenticated, be furnished the secretary of state, and the clerk of this county, by the clerk of this board."

Mr. Alvord, a member. of said board, moved to amend the first resolution offered, by making the number of superintendents of the poor three, and that one be elected from each assembly district. Amendment carried. The resolutions as amended were then adopted. During the year 1858, Loren Golding was the sole superintendent of the poor in said county, none having been elected during the years 1856 and 1857.

At the annual election held in November, 1858, in and for the county of Oswego, six or more persons were voted for by the electors, for the office of superintendent of the poor, in and for said county. Of the votes so given; Orson Ames received 6,639; Loren Golding received 6,599, and John Sayles received 6,497, and the votes for each of whom were more votes than were received by any other person. The board of county canvassers for that year declared them duly elected as such superintendents, all three of whom duly entered upon the discharge of the duties of such office January 1, 1859. The clerk of said county having determined by lot that said John Sayles should hold said office for three years, the said Loren Golding for two years, and the said defendant, Orson Ames, for one year, from the last day of December, 1858. That all of said county superintendents continued to discharge the duties of said office until the morning of the 7th day of November, 1859, when the said John Sayles died.

A general election was held in and for said county on Tuesday the 8th day of November, 1859, being the next day after the death of said John Sayles, for the election,

among other officers, of county superintendents of the poor, at which election 11,731 votes were cast for the office of superintendent of the poor, of which Burton E. Sperry received 6,786, and Andrew Coe received 4,902; also at said election 3,908 votes were cast "for superintendent of poor, to fill vacancy," of which 2,707 were cast for Lucius A. Hovey, 1,143 were cast for William F. Ingall, and 52 were cast for Orson Ames, at which election no votes were cast for superintendent of poor, to fill vacancy within the following towns and election districts in said county, viz.: Albion, Boylston, Orwell, Redfield, Sandy Creek, Williamstown, West Monroe, Constantia Election District No. 1, and in Granby Election District No. 2, all of which was certified to the county canvassers by the inspectors of election of the several election districts in said county. That the votes last aforesaid were counted by said county canvassers, but said canvassers refused to allow the said votes so given to fill vacancy, and declined to give said Hovey a certificate of election to said office. That on the morning of the 5th day of December, 1859, the defendant, Orson Ames, made and executed in writing his resignation of the office of county superintendent of the poor, and on the same morning mailed the same in the post-office in Oswego city, directed to the secretary of State at Albany, which resignation was filed by the secretary of state on the 6th day of December, 1859.

At the annual meeting of said board of supervisors of said county, held at Oswego city on the 5th day of December, 1859, at the evening session thereof, commencing at 7 o'clock, P. M., twenty-four supervisors only then being present, the following proceedings, resolutions and ballots were had, viz.:

The following resolution was adopted, to wit:

"*Resolved*, That we now proceed to an informal ballot for a superintendent of the poor, to fill the vacancy occa-

sioned by the death of John Sayles, Jr. The informal ballot was then taken with the following result: whole number of votes cast, 24. For Orson Ames, 13; for L. A. Hovey, 9; for W. F. Ingall, 1; A. P. Hart, 1.

" On motion of Mr. Mann,

" *Resolved*, That we now proceed to ballot for a superintendent of the poor, to fill the vacancy occasioned by the death of John Sayles. Carried.

" The ballot was then taken with the following result: The whole number of ballots cast was 24, as follows: for Orson Ames, 12; L. A. Hovey, 11; blank, 1; whereupon the chairman declared that Orson Ames was duly appointed superintendent of the poor to fill the vacancy occasioned by the death of John Sayles."

The said defendant, Ames, on the 8th day of December, 1859, took and subscribed the usual oath of office, and filed the same in the clerk's office of Oswego county, together with the usual bond as in such case required, and entered upon the duties of such office, and has continued to act as such county superintendent of the poor for said county ever since. That the aforesaid Loren Golding has continued to act as such county superintendent of the poor since January 1, 1859, and said Sperry since January 1, 1860.

On these facts, the court, by consent of the parties, ordered a verdict for the plaintiffs; first, that the superintendent has usurped, and unlawfully held and exercised the said office of superintendent of the poor since January 1, 1860, and still does so unlawfully hold and exercise the same, and that he be ousted and removed therefrom; and second, that the said plaintiff, Lucius A. Hovey, is entitled to the said office, and the rights and emoluments thereof, and has been so entitled to the same since January 1, 1860, subject to the opinion of the supreme court, at a general term, on a case to be argued in the first instance at a gene-

ral term of the court, with leave to either party to turn the same into a bill of exceptions.

R. H. TYLER, *for plaintiff*.
D. H. MARSH, *for defendant*.

By the court, MULLIN, Justice. There can be no doubt of the constitutional power of the legislature to provide for the election of county superintendents of the poor, to provide that a vacancy may be filled either by election or by appointment by the board of supervisors, and to vest in such board the power to declare whether their respective counties should have one or three superintendents. In pursuance of the power conferred by the constitution, the legislature provided (*Laws of* 1847, *ch.* 498) that the boards of supervisors might limit the number of superintendents to one, and that when no resolution to that effect was passed, the number should be three. Section 2 provides for the election of such superintendent or superintendents at the general election in November, 1848, in the same manner as other county officers. Section 4 provides that vacancies in such office shall be filled by appointment by the board of supervisors.

In Oswego county three superintendents had been elected prior to 1855. On the 30th November of that year, the board of supervisors passed a resolution declaring that thereafter there should be but one superintendent of the poor, and that none should thereafter be elected until the general election in 1858, unless a vacancy occurred.

This resolution did not operate to reduce the number until January, 1857. At that date only two were in office, and on the 1st January, 1858, only one was in office. That one was Loren Goulding, and his term of office expired the 31st December of that year.

In November, 1857, the board of supervisors, at their annual meeting, passed a resolution declaring that the num-

ber of superintendents thereafter elected should be three, and that one be elected in each assembly district. In pursuance of this resolution, at the general election in November, 1858, three persons were elected superintendents, and entered on the duties of their office on the 1st January, 1859.

The question now arises whether the supervisors had power to recall their first determination, reducing the number to one, and to declare that thereafter three should be elected.

There is not a word in the act of 1847 which confers the power to reduce the number of superintendents, which can be construed into a recognition of the authority of the board to increase the number after they have reduced it.

In 1854 the legislature provided (*Laws of* 1854, *ch.* 188, § 1) that when any board should resolve that but one superintendent should be elected, the person elected at the next general election should be the superintendent for three years from the 1st of January next after his election; and one should be elected triennially thereafter. By the 2d section of the same chapter, it is provided that when there are more than one superintendent in office at the time of the passage of a resolution reducing the number, such resolution shall not affect those then in office, but the places of those having one or two years to serve should not be filled.

The board of supervisors are acting under delegated powers; they are confined to those powers, actually conferred; they take nothing by implication; and hence when a power is given to them to reduce the number of the incumbents of an office, it does not authorize them to increase the number.

It seems to me that when the board has passed a resolution to reduce the number, their power over the subject is wholly at an end.

If I am right, then the resolution of November, 1857, is a nullity, and but one superintendent could thereafter be elected.

Inasmuch as but one could be voted for at the election in November, 1858, and as three were declared elected, and entered on the duties of the office, no one was elected, or declared elected, to succeed Loren Goulding, whose term expired the 31st December of that year. When but one person can be elected to an office, and three persons are named on the same ballot, such ballot is void.

So when three persons are declared elected to an office which but one can fill, there is no way of determining which one of them was elected, hence neither is entitled to the office.

Although Goulding's term of office by election expired on the 31st December, 1859, yet no person has been legally elected to succeed him.

By § 40, 1 *R. S.*, *5th ed.*, 413, a vacancy exists in an office when either of the following events occur before the expiration of the term of such office :

1. By death of incumbent; 2. His resignation; 3. His removal from office; 4. His removal from the county; 5. His conviction of an infamous crime; 6. His refusal or neglect to take oath of office or give bonds; 7. The decision of a competent tribunal declaring his election or appointment void.

There was no vacancy, within this section, for the board of supervisors to fill. The term of office expired by its own limitation, and no one was elected to fill the office as successor to the retiring officer.

Goulding therefore either held over, or the office became vacant. I find nothing in the statute authorizing this officer to hold over, and of course the legal title to the office ended with the term to which he was elected.

None of the persons elected in the fall of 1858 acquired any legal right to the office, and it only remains to inquire

whether anything has occurred which gives a right to either the relator or defendant to the office.

If neither Ames, Goulding nor Sayles acquired any title to the office by the election of 1858, no vacancy could be created by the death of Sayles. He was in without color of right, and his death could not create a better right to the office than he had himself during his life.

So also Ames' resignation could not create a vacancy which could be filled by either election or appointment.

No vacancy having occurred in said office which the supervisors could fill, and as the term of office of Goulding expired on the 31st December, 1858, the people alone could select the successor. This was not done in 1858 in a legal manner; but in 1859, it appears by the case, at the general election votes were cast for superintendent of the poor, and Burton E. Sperry had the greatest number of votes, and it appears by the case that he has acted since the 1st January, 1860. He is, in my opinion, the only superintendent of the poor of the county of Oswego. Because,

1st. He has been legally elected to that office.

2d. No vacancy has ever existed since the passage of the resolution by the board of supervisors in 1855, which that board could fill.

The court ordered judgment for the people, ousting the defendant, Ames, and declaring the relator, Hovey, not entitled to the office, without costs to either party.