JACKSON MONTGOMERY, AS SOLE OVERSEER OF THE POOR OF THE TOWN OF SPENCER, EX REL. SEYMOUR SEELEY AND HORACE A. HUGG, APPELLANTS, v. MARCELLUS E. O'DELL, RESPONDENT.

*Town election — ballot law of 1890 (chap. 262) — excise commissioner — separate ballot — more names on ballot than vacancies in office — paster on general ballot — only one valid ballot cast — officer de facto and de jure — liquor license — action for penalties — time of meeting of board to grant licenses.*

When the number of persons to be elected to an office is limited as, *e. g.*, one incumbent to each office, a ballot, containing more names than the one limited, is inoperative as to the office named.

Hence, where, at an annual town meeting, there was only one vacancy in the office of excise commissioner to be filled, but three names were placed on the tickets of each of the two political parties, and all three names on the tickets cast by the majority received the same number of votes, and the inspectors of election having canvassed the votes, made a statement, as their certificate of election, showing the total number of votes cast for commissioners of excise, the number received by each of the six candidates whose names were on the ballots, and stating, " on motion it was voted that all the candidates having the greatest number of votes set opposite their respective names was declared duly elected to the several offices herein named:"

*Held*, that, as all the candidates for the office of commissioner of excise on the ticket receiving the most votes received an equal number of votes, no one of the three was, in fact, elected, or declared elected, to the single vacancy to be filled.

*Semble*, that ballots, cast at an annual town meeting, containing only the names of candidates for excise commissioners, separate from the ballots containing the names of the candidates for the other town offices, and deposited in a different box from that in which the ballots for the other town offices were deposited, should not be counted under the ballot law of 1890 (chap. 262), which required that all the names of candidates for town offices, including commissioners of excise, should be upon one ballot, and that all ballots cast should be deposited in one box.

At the same annual town meeting, which was regularly held while the ballot law of 1890 was in operation, and at which one commissioner of excise was to be elected, there was a ballot containing the names of all the candidates for election, except commissioner of excise, printed and furnished by the town clerk and treated as an official ballot by the electors, but there had been no certificate of nomination of candidates for the various offices filed as required by the statute; one elector pasted on such general ballot a ballot containing only a single name for commissioner of excise, and voted it, and this was the only ballot cast containing but one name for commissioner of excise.

*Held,* that the ballot so used and treated as an official ballot should be regarded as valid, although an unofficial ballot under section 21 of the act of 1890.

That the ballot which was pasted thereon was valid.

*Semble,* that the person named thereon was, in fact, thereby elected commissioner of excise.

That while the person so voted for might not become commissioner *de jure* without a certificate of election, still, as the inspectors failed to certify the election of any person to that office, his election by such single ballot was sufficient to give him an apparent authority or color of title to the office.

The person, Shepard, so elected by the single ballot, and Hugg, one of the persons named on the separate excise commissioner ballots containing three names each cast by the majority of the electors, subsequently attended meetings of the board of excise commissioners, each claiming the office.

*Held,* that as the defect in Hugg's title was notorious, and persons dealing with him must have had notice of the facts, it could not be deemed that he was in apparent possession of the office or ostensibly exercising its functions lawfully or with the acquiescence of the public, and, therefore, that the claim that he was a commissioner *de facto,* so that Shepard could not be treated as a commissioner *de jure* or *de facto* could not be sustained.

Shepard was a properly elected commissioner of excise, and holding his office as such when the town meeting was held, the election for commissioner of excise thereat being to fill the vacancy on the expiration of his term, which expired on the day of the meeting.

*Held,* that if Shepard was not elected at said town meeting, still, by virtue of the statute then applicable (2 R. S. [8th ed.], p. 892, § 30), he was entitled to hold the office until his successor was chosen or appointed and qualified.

Therefore, that a license to sell intoxicating liquors, granted by the board of excise commissioners after said annual town meeting, was not invalid by reason of the fact that Shepard participated, as a commissioner, in granting it.

That the defendant, in an action for penalties for selling liquor without a license, was entitled to show that Shepard was one of the commissioners of the town at the time the license was granted, and that, having shown that fact, the license in question was available as a justification.

*Semble,* that the provision of section 3 of chapter 175 of the Laws of 1870, as amended by chapter 161 of the Laws of 1890, that "the commissioners of excise shall meet * * * on the first Monday of May, in each year, for the purpose of granting licenses as provided by law, and at no other time for that purpose, except upon application for licenses made in good faith in any town or village, and in such case not oftener than once in each month," is not to be construed as rendering a license void if granted at any other time than that mentioned in the statute, and does not require the court to hold a license invalid because granted subsequent to the first meeting of the board, and within a month from that time.

If necessary, in order to uphold a license, it may be presumed, in the absence of proof sufficient to overcome the presumption, that the board of excise commissioners, having properly met at the time provided by the statute, adjourned from time to time until the day when the license was granted.

APPEAL by the relators from a judgment of the Supreme Court dismissing the complaint, entered in the Tioga county clerk's office July 9, 1892, on the decision of the court at the Tioga circuit a jury trial having been duly waived.

Briefly stated, the findings of the trial court were: That the plaintiff was overseer of the poor; that the relators were authorized to prosecute this action in his name; that John Q. Shepard was a member of the board of commissioners of excise prior to February 10, 1891, and that his term of office expired on that day; that Robert Fisher was a member of the board and his term of office expired February 9, 1892; that Seymour Seeley was a member of the board, and his term of office will expire February 7, 1893; that Horace A. Hugg was a candidate for the office of excise commissioner to fill a vacancy caused by the expiration of the term of office of John Q. Shepard; that John Q. Shepard was also a candidate for re-election to fill the same vacancy; that there was but one commissioner of excise to be elected; that a large number of ballots for commissioners of excise was cast on which were printed the names of three candidates; that upon one ballot two names were struck off, leaving John Q. Shepard the only candidate voted for by the elector who cast the same; that by that ballot Shepard was elected excise commissioner of the town to succeed himself; that before the 12th of May, 1891, Shepard took the required oath of office, qualified and entered upon its duties; that the board of excise commissioners was duly organized May 4, 1891, by the election of Robert Fisher as chairman and Seymour Seeley as secretary; that Horace A. Hugg was present and assumed to participate in the proceedings of the board as a member, and at the same time John Q. Shepard was present and participated in the proceedings of the board as a member thereof; that on May twelfth the board of excise consisted of Fisher, Seeley and Shepard, and on that day at a meeting duly held the board granted the defendant a license authorizing him for one year from that time to sell strong and spirituous liquors in quantities less than five gallons at a time, which license was in the usual form and was signed by Robert Fisher and John Shepard who voted for the same; that the only ballots cast for Horace A. Hugg were those upon which the names of three candidates were printed for excise commissioner, of which his was one; that within the time specified in

such license the defendant sold strong and spirituous liquors to at least ten different persons.

As conclusions of law the court held that the defendant was entitled to a judgment in his favor, dismissing the complaint upon the merits, with costs, and directed judgment accordingly.

*W. Martin Jones*, for the appellants.

*E. E. Dean* and *S. D. Halliday*, for the respondent.

MARTIN, J.:

This action was brought in the name of the overseer of the poor of the town of Spencer, to recover of the defendant a number of penalties for the sale of intoxicating liquors without having a license therefor. That it was properly brought in the name of the over- seer is not questioned. Neither is it denied that defendant sold intoxicating liquors at the times proved and found by the court. It was conceded that at least ten sales were made. The defendant justified under a license which he claimed was granted to him by a majority of the commissioners of excise of the town of Spencer, where he lived and where the sales were made.

The main controversy arises over the question whether John Q. Shepard, one of the persons who signed defendant's license, was then a commissioner of excise of that town. That he had been prior to the 10th day of February, 1891, is not disputed. But his term of office, under his previous election, expired on that day, unless he held over, because no person was elected to fill his place. The annual town meeting was held February 10, 1891. There was but one vacancy in the office of commissioner of excise, yet three persons were placed on the tickets of each party, and were voted for by all of the electors who voted at that election except one. No certifi- cate of nomination was made, or certified to, as required by statute. None of the electors were entitled to vote for more than one com- missioner. The names of the persons who were candidates for the office of commissioner were placed upon separate tickets, and the ballots were deposited in a ballot-box separate from that in which the ballots for other town officers were deposited, except those which will be hereafter considered.

The manner of preparing the ballots and conducting this election

was in direct conflict with many of the requirements of the ballot law. (Laws of 1890, chap. 262.) In *People ex rel. Sherman* v. *Person* (19 N. Y. Supp., 297, affirmed, 32 N. E. Rep., 645), under chapter 296 of the Laws of 1891, which provides that ballots for commissioners of excise shall be separate from ballots for other town offices and deposited in separate boxes, it was held that ballots for town officers found on ballots indorsed " excise," and in the excise or town ballot-box, should not be counted. As the statute of 1890, which was in operation when this town meeting was held, required that all the names of candidates for town offices, including commissioners of excise, should be upon one ballot, and that all the ballots cast should be deposited in one box, it would seem that the ballots other than those containing the names of the town officers, or that were deposited in any box except that in which the ballots for town officers were deposited, should not have been counted. If, as held in the Person case, ballots that contained the names of town officers, other than commissioners, affixed to an excise ballot and deposited in the excise or town box, should not be counted, because the statute, as it then stood, required them to be upon separate tickets and to be deposited in separate boxes, we can perceive no good reason why the converse of that proposition is not equally true ; nor why, where the ballots are required by the statute to contain the names of the candidates for all the town officers to be elected, and to be deposited in one box, the ballots deposited in another containing only the names of commissioners of excise should not also be rejected. We think the principle of that case controls this question, and that all the ballots deposited in the box, other than that which was authorized, should have been rejected.

The three persons whose names were placed on what was known as the no-license ticket each received 295 votes, while those placed upon the license ballot each received only 195 votes. When the votes were canvassed the inspectors made a statement showing the total number of votes cast for commissioners of excise, the number received by each of the six candidates whose names were on the ballots voted, and then added : " On motion it was voted that all the candidates having the greatest number of votes set opposite their respective names, was declared duly elected to the several offices herein named." No other certificate was made by the inspectors.

Therefore, as all the candidates for commissioners on the ticket receiving the most votes received an equal number, they were all declared elected and no one of the three was elected or declared by the inspectors to have been elected to fill the vacancy which occurred by the expiration of Shepard's term. While if one of two candidates for an office is ineligible, the one who is eligible, receiving a minority of the votes, is not thereby elected, unless his opponent's disqualification was known to the electors (*People ex rel. Furman* v. *Clute*, 50 N. Y., 451; *People ex rel. Sherwood* v. *Board of Canvassers*, 129 id., 374), still, it is obvious that when the number of persons to be elected to an office is limited, as one incumbent to each office, a ballot containing more names than the number limited, must be inoperative as to the office named. The very purpose of voting is that the voter may exercise *his choice*, and when he names more than the limited number, it is impossible to determine which of the number he prefers. Thus, where, at an annual town meeting the electors limited the number of constables to be chosen to four, it was held that ballots containing more than four persons, designated as voted for, for that office could not be canvassed, but must be rejected (*People ex rel. Swan* v. *Loomis*, 8 Wend., 396), and if a ballot for one office has two names upon it, it cannot be sustained by proof that the voter intended to cast his vote for one of the persons named. (*People ex rel. Eastman* v. *Seaman*, 5 Den., 409.) It has also been held that where but one person can be elected to an office, and three persons are named on the same ballot for such office, the ballot is void. (*People ex rel. Hovey* v. *Ames*, 19 How. Pr., 551.) Indeed, it does not seem to be seriously claimed by the appellants that any of the persons named on those ballots was, in fact, elected.

The appellants' claim is, that the certificate of the inspectors gave Horace A. Hugg, one of the persons whose names appeared on the no-license ballots, apparent authority or color of title to act as such commissioner, and, hence, he became a commissioner *de facto* upon qualifying and acting as such, and that he being a commissioner *de facto* to fill the vacancy caused by the expiration of Shepard's term, he was the only commissioner who could fill that vacancy, and Shepard was neither commissioner *de jure* nor *de facto*.

It is somewhat difficult to see how this contention can be upheld, especially in view of the fact that Hugg's title to the office was not

recognized or continued for such a time as to justify third persons in believing that he was such officer. There was no certificate by the inspectors indicating that Hugg was elected any more than the two other persons on the same ballot. The certificate was to the effect that all were elected. No one was certified to have been elected to fill the vacancy caused by the expiration of Shepard's term. If Hugg had apparent authority or color of title, so did the other two, so far as the election or the certificate of the inspectors was concerned.

The court has found, upon evidence sufficient to justify it, that at the first meeting of the commissioners both Shepard and Hugg were present and participated in the proceedings of the board, and that Shepard participated in all their subsequent proceedings down to the time when the license to the defendant was granted.

It is true that when there is but one office, there can be neither a *de jure* and *de facto* officer in possession of the same office at the same time, nor two different officers *de facto*, in possession of an office for which one incumbent only is provided by law. (Mechem on Public Officers, §§ 322, 323, and cases cited.) It is also true, that " Third persons who have occasion to deal with a public officer, and to rely upon his acts, finding a person in the apparent possession of the office, and ostensibly exercising its functions lawfully, and with the acquiescence of the public, can neither be expected to know nor to investigate, in every instance, his title to the office or his eligibility to election to it. As to them, he must be held to be, what he appears to be, the lawful occupant of the office. This rule is demanded by public policy as the only one affording protection to the public. * * * So the rule cannot apply where the defects in the title of the assumed officer are notorious, and the persons dealing with him have notice of the facts." (Mechem on Public Officers, § 328, and cases cited.)

But, in the present case, we do not find any evidence to show that Hugg was in the apparent possession of the office, or ostensibly exercising its functions lawfully, or with the acquiescence of the public. As both Hugg and Shepard were present at the meetings of the board, and each claiming the office, the defect in Hugg's title was notorious, and persons dealing with him must have had notice of the facts.

We are of the opinion that Hugg was neither commissioner *de facto* nor *de jure*, and that the appellants' claim that he was commissioner *de facto* so that Shepard could not be treated as a commissioner *de jure* or *de facto*, cannot be sustained.

This brings us to the consideration of the question as to what power or authority Shepard had to exercise the rights and perform the duties of such office. The court found that one ballot was cast for Shepard which was pasted on the regular town meeting ballot, and contained only the name of Shepard for excise commissioner, the names of the other persons for excise commissioner having been struck off. This finding was, we think, justified by the evidence. The court also found that, as this was the only ballot that was regular, Shepard was elected. That a town meeting was lawfully held at that time, and that a commissioner of excise was to be elected at such town meeting, there is no doubt. Therefore, this case does not fall within the principle of the case of the *People ex rel. Fowler* v *Bull* (46 N. Y., 67), as in that case it was held that it was not lawful to hold an election at the time to elect a candidate for the office claimed by the relator.

It seems to be settled that such a ballot would be valid when affixed to the regular official ballot, whether the candidate was regularly nominated or not, and although the statute forbids *the clerk* to put any name on the official ballot, except those nominated and certified as having been made by a political convention or by the certificate mentioned in section 5 of that act. (Laws of 1890, chap. 262, § 17.) In *People ex rel. Bradley* v. *Shaw* (31 N. E. Rep., 512) it was said : " The first objection — that the relators having failed to receive a proper nomination by a political party which, at the last election before the holding of the convention or primary meeting, polled at least one per centum of the entire vote cast in that political division of the State for which the nomination is made — is wholly unsound and without force. The plan contained in sections 1, 2 and 3 of the ballot reform act (Laws of 1890, chap. 262) was a provision for the printing of an official ballot at the public expense ; a feature well designed to secure the desired secrecy and independence of the ballot. But that it was in no wise intended to prevent the voter to vote for any candidate whom he chose is evident from the further provisions of the law (§ 25) that 'the voter

may write or paste upon his ballot the name of any person for whom he desires to vote for any office.' Indeed, to hold otherwise would be to disfranchise or to disqualify the citizen as a voter or a candidate, and, in my opinion, to affect the law quite unnecessarily with the taint of unconstitutionality in such respects."

The only other paster ballots found by the inspectors contained the names of three persons for one office and were clearly irregular. Hence it would seem that if any commissioner of excise was elected at that town meeting, it was Shepard, and that he was elected unless it can be held that there was no official ballot upon which a paster might be placed. In *Commonwealth ex rel. Clark* v. *Read* (2 Ashm., 261), where, to authorize the county board to proceed to the election of a treasurer, it was necessary that at least eleven members of the twenty comprising it should be present, it was held that, if a majority of those present either refused to vote, or voted in a manner different from that prescribed by law, a minority composed of a single member was sufficient to make an election.

As we have already seen, there was no certificate of the nomination of candidates, for the various officers to be voted for, filed with the clerk, as required, by the statute. There was, however, a printed ballot containing all the names of the candidates to be elected at such town meeting, except a commissioner of excise. As the ballots thus printed and furnished by him were used and treated as an official ballot by the electors of the town, we are disposed to think that it should be regarded and treated as valid, although an unofficial ballot such as is provided for by section 21, and that it should be held that the vote for Shepard, which was pasted upon such a ballot, was valid and that he was, in fact, elected as such commissioner of excise. If it be said that this conclusion defeats the will of a majority of the electors of the town, the answer is two-fold: (1.) That only one of the electors has by his vote expressed his choice. The fact that the other electors have, by their votes, indicated that they did not desire the election of the person thus voted for without voting for any other one person to take his place, was of no avail. (2.) The statute in plain and positive terms provided how the choice of an officer by the electors should be made, and as the statute was not even substantially complied with, the ballots thus cast were void,

although the result may have defeated the intent of a majority of the electors. (*People ex rel. Nichols* v. *Board of Canvassers*, 129 N. Y., 395.)

It was by virtue of this election that Shepard claimed to act as commissioner of excise for the town. While it may be that he would not become such commissioner *de jure* without a certificate from the inspectors showing his election to such office, still, as the inspectors failed to certify the election of any person to fill the office, it was, we think, sufficient to give him an apparent authority or color of title to such office.

Moreover, Shepard was the properly elected commissioner, and holding his office as such, when the town meeting in question was held. If, therefore, neither Hugg nor Shepard was elected, the question is presented whether the office became vacant, or whether Shepard held over until his successor was elected and had qualified. As the law now stands, there would be no question. Chapter 569, Laws of 1890, section 12, provides: " All such officers (being the various town officers, including commissioners of excise), except justice of the peace, shall hold their respective offices until others are elected or appointed in their places and have qualified." This statute did not, however, go into effect until March 1, 1891. (See § 243.) But before the adoption of this statute the Revised Statutes provided : " Town officers shall hold their offices for one year, and until others are chosen or appointed in their places, and have qualified. (2 R. S. [8th ed.], 892, § 30.)

It seems to have long been the policy of the law in this State, that all town officers, except perhaps those that were stictly judicial, should hold their respective offices until successors should be chosen and qualified. That commissioners of excise elected in pursuance of the provisions of chapter 444 of the Laws of 1874, are town officers we have no doubt. The first section of that statute recognizes them as such. It provides that they shall be elected as other town officers are elected, thus showing that they were to become town officers when elected. Being town officers the question is whether the provisions of the Revised Statutes apply to them. It will be observed that this statute provides two things: (1.) That town officers shall hold their offices for one year; and (2), that they shall hold their offices until others have been chosen and qualified. The term of

office of commissioners of excise having been established at three years, it modified the statute so far as the term of office of commissioners was concerned, but, we think, did not affect the remainder of that statute, which provided that town officers should hold their offices until others were chosen or appointed and qualified.

We are, therefore, of the opinion that if Shepard was not elected, still, by virtue of the provisions of the Revised Statutes cited, he was entitled to hold the office until his successor was chosen or appointed and qualified, and that the trial justice was justified in holding that he was a commissioner of excise.

It is, however, contended by the appellants that in a collateral proceeding the court has no jurisdiction to change the declaration of the board of town canvassers and declare a candidate elected when the board has declared him defeated. We do not see how this contention has any application to this case. For, as we have already seen, the town canvassers failed to declare any candidate elected to fill the vacancy caused by the expiration of Shepard's term. It was said by DANFORTH, J., in *Cronin* v. *Stoddard* (97 N. Y., 271), that "one who desires to enjoy the privileges afford's by the act under which the proceedings in question were had (Laws 1857, chap. 628) must see to it that they are granted by one duly authorized, or submit to the penalty prescribed." Thus it would seem that the burden is cast upon the person holding the license of establishing the fact that persons who sign a license to sell intoxicating liquors under the provisions of that statute are commissioners of excise and authorized to grant the same. Assuming that this burden was cast upon the defendant, we think it cannot be properly claimed that he should be debarred from showing that the persons signing his license were, in fact, authorized to grant it, especially where, as in this case, there was no certificate or statement by the town canvassers which declared any person elected to fill the office. We think the defendant was properly permitted to show that Shepard was one of the commissioners of excise of the town of Spencer, and having shown that fact that the license held by the defendant was a justification, and that the court properly disposed of the case on the trial, unless for some other reason the license granted was void.

The only other ground upon which the defendant's license is claimed to be invalid is, that it was granted on the twelfth day of

May, after the commissioners had already met on the fourth and sixth days of that month. The statute regulating the sale of intoxicating liquors provides: "The commissioners of excise shall meet \* \* \* on the first Monday in May in each year for the purpose of granting licenses as provided by law and at no other time for that purpose, except upon application for licenses made in good faith in any town or village, and in such case not oftener than once in each month." (Laws of 1870, chap. 175, § 3, amended by Laws of 1890, chap. 161.)

An examination of the statutes relating to this subject as they have existed since 1857 discloses that the legislature, by each of the statutes passed during that time, has sought to limit the time during which the commissioners should sit for the purpose of granting licenses. By the statutes of 1857 and 1870 they were permitted to sit only ten days in each year. By the statute of 1890 the law was changed so that there was no positive limitation as to the number of days they should be employed in granting licenses, but, instead, it provided that they should meet for that purpose on a day named and at no other time, except upon application for licenses, and then not oftener than once in each month. The purpose of this provision was, we think, to limit the time which commissioners should devote to the granting of licenses, and thus lessen the expenses of the towns, and not to entrap applicants for license whose license should be issued on some day other than that mentioned in the statute into a course of action by which they would incur penalties to a ruinous extent. We think this statute, so far as it relates to the time when licenses are to be issued, should be construed as directory. It is a general rule applicable to the construction of statutes, that provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory, unless the nature of the act to be performed or the phraseology of the statute is such that the designation of time must be considered as a limitation of the power of the officers. (*People* v. *Allen*, 6 Wend., 486; *Gale* v. *Mead*, 2 Denio, 160; *People ex rel. Knox* v. *Village of Yonkers*, 39 Barb., 266; *Dawson* v. *People*, 25 N. Y., 399; *Witheril* v. *Mosher*, 9 Hun, 412; *Rawson* v. *Van Riper*, 1 T. & C., 370; *Matter of Broadway Widening*, 63 Barb., 572; *Metcalf* v. *Mayor, etc., of New York*, 17 N. Y. St. Rep, 97.)

In this case, the nature of the act to be performed by the commissioners was not of a character indicating that time should be considered as a limitation of their power. Nor do we think that the language of the statute was intended to limit the power of the commissioners to the times mentioned. While this question may not be wholly free from doubt, yet, we cannot think it was the purpose of this statute to render the acts of the commissioners void for want of power, if performed at any other than the time mentioned in the statute, but that its purpose was to limit the time they should devote to the granting of such licenses, so far as consistent with the duties to be performed by such officers. Such a construction, we think, accomplishes the purpose of the statute, and avoids a construction which would render it a delusion and a snare to the unwary recipient of a license. That this statute should not be construed so as to produce such a result, unless its plain language requires it, is quite manifest. That law-makers cannot always foresee all the possible applications of the general language they use; and it frequently becomes the duty of the courts, in construing statutes, to limit their operation so that they shall not produce absurd, unjust or inconvenient results not contemplated or intended. A case may be within the letter of the law, and, yet, not within the intent of the law-makers; and in such a case a limitation or exception must be implied. (*Lake Shore and M. S. Ry.* v. *Roach*, 80 N. Y., 339.) We think the language of this statute, when properly construed, does not require us to hold that defendant's license was invalid because granted subsequent to the first meeting of the board, and within a month from that time.

If, however, this construction of the statute cannot be sustained, still, there is another ground upon which the validity of the defendant's license should be upheld. That the commissioners of excise, having properly met at the time provided by the statute, could continue in session or adjourn, from time to time, until the business before them was fully completed, we have no doubt. Therefore, if necessary to uphold this license, we think it should be presumed that the board of commissioners of excise adjourned, from time to time, until the day on which the defendant's license was granted. The law constantly presumes that public officers charged with the performance of official duty have not neglected the same, but have

performed it at the proper time and in the proper manner. (Mechem on Public Officers, § 579.) In this case, we fail to find sufficient proof to overcome this presumption. The evidence tends to show that the meeting of the board on the fourth of May was adjourned, and that the meeting held on the sixth was adjourned until the twelfth day of May.

By these considerations we are led to the conclusion that the defendant was justified by his license in making the sales complained of, and that the decision of the trial court should be sustained.

HARDIN, P. J.:

I think the license was a protection, and the opinion is right, and that the judgment should be affirmed.

MERWIN, J.:

I am inclined to the opinion that Shepard held over; so I concur in the result.

Judgment affirmed, with costs.