106   157
133   103

STATE OF IOWA V. L. BERNHOLTZ, GEORGE B. FRAZIER, FRANK SALMEN, F. M. BAUGHMAN, B. UNGRUE, Appellants.

**Elections:** BALLOT: *Fault of officials.* Under Code, section 1122, providing that no ballot, properly marked by the voter, shall be rejected because of any discrepancy between it and the nomination paper, nor for any error in stamping or writing the indorsements thereon by the officers, nor because of any error in delivering the wrong ballots at the polling place, but that any ballot delivered by the proper official to a voter shall be counted as cast for all candidates for whom the voter had a right to and did vote, an election of candidates for municipal offices, by a majority of ballots cast, is not invalidated by the fact that the mayor and council, without authority, changed one ticket on the ballot by heading it "democratic," which change was without fraud and deceived no one, where the election officers accepted those, and refused to use the ballots prepared by the recorder who was rightfully authorized to prepare them. The misconduct of election officers cannot overturn the voter's will.

SAME. Code, section 1121, prohibiting any "but ballots provided in accordance with the provisions of this chapter" from being counted, intends that no ballot of the voter's choosing, but only those furnished by the proper officials to the voter, shall be counted.

*Appeal from Carroll District Court.*—HON. Z. A. CHURCH, Judge.

THURSDAY, OCTOBER 6, 1898.

THE defendants were mayor, treasurer, recorder, councilman, and assessor of the incorporated town of Breda prior to the election of March 28, 1898, and claim to hold over because of no election on that day. A ticket was duly nominated by petition, and candidates named for all of these offices, which was designated on both printed ballots as "Citizens." A caucus, designated in the call printed in a local paper as "Citizen's Caucus," was held on March 16, 1898, and B. K. Jackson nominated for mayor, F. N. Bruning for treasurer, Henry Bruning for recorder, A. H. Le Duc for assessor, and J. H. Bohenkamp, H. Bruning, and Theo. Ewaldt for councilmen. The citizens present belonged to the democratic party, though the certificate filed with the recorder did not indicate any party whatever. Two days before the election three members of the council and citizens requested the mayor to call a special meeting of that body in order to have "Democratic" placed over this ticket on the ballot, which he did on four hours' notice. Three members met with the mayor, appointed Joseph Dunck recorder pro tem., and directed him to make the proposed change. By the town ordinance the mayor was not permitted to convene the council on less than twelve hours' notice. Dunck and the city marshal caused a sample ticket to be posted, and also tickets to be printed for use on election day, with candidates as stated,—the ticket headed by Jackson for mayor under the designation "Democratic." Salmon, the recorder, had tickets printed without this heading, and delivered them, as required by law, to the election officers, by whom they were rejected. Those prepared by Dunck were received, and, being properly endorsed, were handed to the voters, and cast at the election. The candidates on the ticket headed "Democratic" received a majority of the votes cast, and were declared elected. The defendants, believing the election was illegal, refused to surrender their offices, and this action was brought to oust them therefrom. The relief prayed as granted, and the defendants appeal.— *Affirmed.*

*W. R. Lee* for appellants.

*A. T. Olerich* and *Salinger & Korte* for appellee.

LADD, J.—The ballots cast at the election in the incorporated town of Breda, March 28, 1898, were not prepared and printed by any one authorized by law. The statute confers this duty on the recorder without any supervision on the part of the mayor or council. Section 1107, Code. It is only when objections are filed that the mayor and members of the council may act, and then only to pass upon the particular objections urged. Section 1103, Code. In this case no objections were filed, and the mayor and three councilmen, in assuming to correct the ballot, were mere intermeddlers. Whether the meeting of the council was lawful, or Dunck rightly appointed recorder pro tem., we need not inquire, for, as such, it had no authority whatever with reference to the preparation of the ballots, and could confer no such authority on him. His duties extended no further than the temporary purposes of that meeting, and in no way ousted the duly-elected recorder from the discharge of his duties in preparing and printing the ballots. The reason for rejecting those so prepared by the judges does not appear, unless it be their belief in the plenary powers of the council not only to ignore their own ordinances but the statutes of the state. They accepted those printed by Dunck, and these were voted by the electors. The two sets were identical, with this exception: That used had "Democratic" over the ticket headed by Jackson for mayor, while that designation was omitted from the other. As no objection to the certificate of nomination made by the caucus was filed, the propriety of printing that is not argued. But see *Schuler v. Hogan,* 168 Ill. Sup. 369 (48 N. E. Rep. 195); *Bowers v. Smith* (Mo. Sup.), 17 S. W. Rep. 761; *People v. Wood* (N. Y.), 42 N. E. Rep. 536. The point made is that, as the ballots cast were not prepared by any one authorized by law, the election was

invalid. With the statute as it was when *State v. Smith,* 94 Iowa, 616, was decided, this position would be sound. The election law, however, was somewhat modified by the Code which went into effect October 1, 1897. Section 1122 is as follows: "No ballot properly marked by the voter shall be rejected because of any discrepancy between the printed ballot and the nomination paper or certificate of nomination, and it shall be counted for the candidate or candidates for such offices named in the nomination paper or certificate of nomination. No ballot furnished by the proper officer shall be rejected for any error in stamping or writing the endorsements thereon by the officials charged with such duties, nor because of any error on the part of the officer charged with such duty in delivering the wrong ballot at any precinct or polling place, but any ballot delivered by the proper official to any voter shall, if properly marked by the voter, be counted as cast for all candidates for whom the voter had a right to vote, and for whom he has voted." It must be borne in mind that the election law was enacted to aid the elector in expressing his free choice, and not, by technical obstructions, to make the right of voting difficult and insecure. He has no part in the preparation of the ballots, and the object of this section is to prevent his disfranchisement without any fault on his part because of some mistake or willful misconduct of the election officers. The distinction between errors of such officers which would have the effect to deprive voters of the franchise, and a disregard of the law by the electors themselves, runs through all the cases. See *Lindstrom v. Board,* 94 Mich. 467 (54 N. W. Rep. 280); *Miller v. Pennoyer,* 23 Or. 364 (31 Pac. Rep. 830); *Kirk v. Rhoads,* 46 Cal. 399; *Cook v. Fisher,* 100 Iowa, 31, and authorities cited. The very evident purpose of section 1122 was the complete protection of the voter in the exercise of the right of suffrage, if himself without fault, regardless of the errors of the election officers. The clause in section 1121 prohibiting any "but ballots provided in accordance with the provisions of this chapter" from being counted, evidently

relates to ballots furnished the voter.    He may not use a
ballot of his own choosing, but must cast such as are provided
by the proper officials.    This is to be given him by the judges
of election.    Section 1114.    When so received, he may rely
upon it as genuine, and, when properly marked by him, have
it counted as cast for all candidates for whom he had the right
to vote and did vote.    This is not a case where the electors
have been deceived or misled by the mistake or fraud of the
officers.    The ballots were in all essential particulars like those
prepared by the recorder.    The use of the word "Demo-
cratic" on the ticket could have deceived no one.    The voters
had the right, under section 1122, to have the ballots counted
as cast, and when this was done the result was not in doubt.
While the officers are without excuse in violating the plain
provisions of the statute, their misconduct cannot be per-
mitted to overturn the expressed will of the people.——
AFFIRMED.