FRANK PEABODY V. N. S. BURCH *et al.*

No. 14,987   (89 Pac. 1016.)

SYLLABUS BY THE COURT.

1. ELECTIONS—*Preparation of Official Ballot.* Although mandatory provisions of the statute are disobeyed in the preparation of the official ballot the will of the voters expressed by means thereof cannot on that account be disregarded.

2. ———— *Canvassing Board May Not Reject Ballots for Mistakes of Officer Preparing Them.* The provision of the statute (Gen. Stat. 1901, § 2718; Laws 1903, ch. 228, § 4; Laws 1905, ch. 222, § 3) that "no ballots other than those provided, printed and indorsed in accordance with the provisions of this act shall be delivered to a voter, deposited in the ballot-box, or counted," does not authorize the election board or other canvassing body to review the work of the officer who prepared the ballot and reject any votes by reason of some wrongful act or omission on his part in that connection.

3. ———— *Party Ticket Wrongfully on the Ballot—Votes Cast for It to be Counted.* The fact that the officer who is charged with the duty of preparing an official ballot wrongfully causes to be printed thereon the ticket of a political party which has forfeited its right to such representation by a failure to file a certificate of nomination will not justify a refusal to count ballots marked in favor of such ticket.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed April 6, 1907. Affirmed.

*Waggener, Orr & Challiss,* for plaintiff in error.
*Jackson & Jackson,* for defendants in error.

The opinion of the court was delivered by

MASON, J.: Prior to a city election in Muscotah each of two local political organizations, known respectively as the People's party and the Citizens' party, nominated a full ticket. A certificate of nomination was duly filed by the president and secretary of the convention of the People's party, but no certificate of any kind was filed in behalf of the Citizens' party. Nevertheless the city clerk caused both tickets to be printed upon the official ballot. A majority of the voters marked their ballots in favor of the candidates on the Citizens' ticket, and they were declared elected. A candidate on the People's ticket claiming to have been elected police judge brought a proceeding in the district court to enforce his right to that office. Being denied relief, he prosecutes error. His contention is that inasmuch as the Citizens' ticket was printed upon the ballot in direct disobedience of the statute it was not a means by which a voter could give effective expression of his choice, and that all ballots marked in favor of that ticket should have been rejected. The adoption of this rule would have resulted in the plaintiff's election.

It is true that the statute expressly forbids the placing of any names on the ballot excepting such as are brought to the notice of the clerk by proper certificates, in these terms: "All nominations made *and certified* in accordance with the provisions of this act, *and none other,* shall be printed on the official ballot." (Gen. Stat. 1901, § 2707; Laws 1903, ch. 228, § 2; Laws 1905, ch. 222, § 1.) In the plaintiff's brief it is assumed that an important if not controlling question is whether this language is mandatory or merely directory. There is no room for doubt upon that subject. The provision is mandatory. It is the imperative duty of the clerk to follow the statute—a duty

which the courts upon timely application would un-
hesitatingly enforce.  But the question here presented
is, What consequence shall follow his disobedience?
Where an elector signifies his choice in the only way
permitted by the printed directions must he lose his
vote because in doing so he makes use of a ticket which
ought not to have been placed upon the ballot?

The adoption of the Australian ballot law has made
a great change in the method of ascertaining and giv-
ing effect to the popular will.  Formerly the rule was
to count any ballot from which by any reasonable
method of interpretation the purpose of the person
casting it could be gathered.  Now such purpose, how-
ever clearly shown, is disregarded unless expressed
in a particular way.  Legislative restrictions upon the
exercise of the right of suffrage are enforced by the
courts without hesitation to the very letter, so long
as they relate to matters within the control of the in-
dividual voter.  But with respect to regulations re-
garding the conduct of others the effort is still to
seek such a construction of the law as will accomplish
rather than defeat the expressed wishes of the people.
The case of *People ex rel. Hirsh v. Wood,* 148 N. Y.
142, 42 N. E. 536, arose upon facts very similar to
those here presented.  It was there said:

"The effort in this proceeding is to disfranchise in-
nocent voters because of a latent defect in the official
ballot furnished by the state, not discernible on in-
spection, which ballot they were compelled to use, the
defect consisting in the unauthorized insertion therein
by a public official, charged with the duty of making
up and printing the ballots, of names of candidates
in a party column not duly nominated by such party.
The intention of the voters who used this party col-
umn to express their choice is clear and admits of no
doubt.  Each one received his ballot from the inspect-
ors, marked it with the cross under the party name
and emblem, and returned it to the inspectors, by
whom it was deposited in the box and subsequently
counted.  We can conceive of no principle which per-
mits the disfranchisement of innocent voters for the

35—75 KAN.

mistake or even the wilful misconduct of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult." (Page 146.)

After quoting a part of the foregoing extract the court said, in *Blackmer v. Hildreth,* 181 Mass. 29, 63 N. E. 14:

"This must be borne in mind in the construction of such statutes, and the presumption is that they are enacted to prevent fraud and to secure freedom of choice, and not by technical obstructions to make the right of voting insecure. The provisions above recited with reference to the preparation of the ballot are plainly limited and confined to that purpose. They are binding upon the officers for whose guidance and direction they are needed. If it be seasonably objected to a nomination paper that it was not filed within the time required by § 145, or that the provisions of §§ 141 and 142 have not been complied with, it is the duty of the proper board to inquire into and settle the question, and to sustain the objection, if found to be true, and reject the paper. So far as respects their decision these provisions are mandatory. When the decision is made it is final, and a ballot made up in accordance therewith is not thereby made illegal. And in the same way the action of the town clerk, at least in the absence of fraud and corruption, as to the papers to which no objection is made, must be regarded as final so far as respects the ballot which he prepares.

"But with the preparation of the ballot the influence of these provisions ends. If there be irregularities like those in this case they do not accompany the ballot and taint it in the hands of the voter. This view of the statute gives due weight and scope to the provisions in question, and preserves the sanctity of the right of suffrage and its free and honest exercise. To hold otherwise would be to lose sight of the purpose for which these provisions were made, namely, to provide the method and time for the preparation of the

ballot, and would subject our elections to intolerable and perplexing technicalities in no way material to the substantial merits of the controversy or to the freedom and result of the action of the voters. Its natural tendency would be to thwart rather than to secure a true expression of the popular will." (Page 31.)

In *State v. Fransham*, 19 Mont. 273, 48 Pac. 1, it was said:

"There is wisdom in that construction of election laws which holds rigidly to the doctrine that in our country, where the will of the people is supreme, when clearly expressed it cannot be defeated by a claim that an official neglected to properly make up the ballot published and voted. A party or candidate may be defeated by an official's wrong, but the electors must be secure in the knowledge that their votes, when legally cast, will be counted. And we cannot hold to the contrary, unless compelled to do so by mandatory provisions of law and construction requiring such votes to be held void not in our constitution or codes. The argument that the ballot was a falsehood, and that no person should profit by it, has considerable force, we admit; but it is not strong enough, under the facts admitted by the demurrer to the complaint herein, to outweigh the more important controlling principle that the electors, who do not make up the ballot, must rely with perfect assurance and safety upon the official ballots given them, and that their ballots will be counted as marked, and that their legally expressed will cannot be overthrown where they are not at fault, although it should turn out that the public officer who had to do with the preparing of the ballot voted may have neglected his duty." (Page 290.)

And in *Kulp v. Railey* (Tex.), 89 S. W. 957:

"The voter has nothing to do with the making up of the ballot, but is required to use it in order to exercise his right to vote. He can only vote for those whose names are printed on it, or strike them out and insert others. The ballot comes to him from the officers of the law, regular on its face, and authenticated, both by the printing on it and by the signature of the judge of election, as the ballot which he is required to use. If it is in the power of the legislature

to thus impose on voters, in exercising their consti-
tutional right, the necessity of voting tickets prepared
for them in advance, and yet to defeat their choice,
not for any act or omission of their own, but because
of an antecedent direliction of the officers appointed
by law to prepare the ballots, certainly no purpose to
do so can be imputed to the legislature without the
clearest expression of it." (Page 959.)

In the recent case of *State v. Bunnell* [Wis.], 110
N. W. 177, it was held that even where a candidate
had wrongfully changed his nomination papers after
they had been signed the voters had a right to rely
upon the correctness of the official ballot, and the can-
vassing board was not required to reject the ballots
cast for such candidate. (See, also, *Ogg v. Glover*,
72 Kan. 247, 256, 83 Pac. 1039, and cases there cited;
*Attorney General v. Campbell*, 191 Mass. 497, 78 N.
E. 133; *State v. Mason* [Wash.], 88 Pac. 126; *People
ex rel. Williams v. Bd. of Canvassers*, 105 N. Y. Supr.
Ct., App. Div., 197, 94 N. Y. Supp. 996, affirmed in
183 N. Y. 538, 76 N. E. 1116.)

None of the cases cited from other jurisdictions
arose under statutes precisely like ours, but the gen-
eral rule of construction they all announce is none the
less pertinent on that account. The leading case of
*People ex rel. Hirsh v. Wood*, 148 N. Y. 142, 42 N. E.
536, involved an act containing substantially this pro-
vision, which was a part of the original Australian
ballot law adopted in this state: "No ballot without
the official indorsement shall be allowed to be depos-
ited in the ballot-box, and none but ballots provided
in accordance with the provision of this act shall be
counted." (Laws 1893, ch. 78, § 25.) The court said
that while this language was somewhat obscure, its
main purpose was to enforce the use of official ballots,
and that the prohibition against counting referred to
ballots provided by the public officers, adding:

"It is impossible to suppose that the legislature used
the word *provided*, as synonymous with *prepared*, so
as to visit upon voters a forfeiture of the franchise
if an official should make any departure in preparing

the ballot from the strict authority conferred upon him." (Page 148.)

So in *State of Iowa v. Bernholtz et al.*, 106 Iowa, 157, 76 N. W. 662, the court said of the same clause that it evidently related to ballots furnished the voter, adding: "He may not use a ballot of his own choosing, but must cast such as are provided by the proper officials." (Page 161.)

In the revision of 1901 this portion of our statute was remodeled into its present form, which is as follows:

"No ballots other than those provided, printed and indorsed in accordance with the provisions of this act shall be delivered to a voter, deposited in the ballot-box, or counted." (Gen. Stat. 1901, § 2718; Laws 1903, ch. 228, § 4; Laws 1905, ch. 222, § 3.)

The object of this change is not entirely clear. We are satisfied, however, that the legislature never intended that no ballot should under any circumstances be counted unless in its preparation every requirement of the statute had been fully met. Such a construction, indeed, would be fatal to the claims of the plaintiff, for it would forbid the counting of any of the ballots cast at the election in question (since none of them was prepared in accordance with the law), and would require the entire proceeding to be treated as a nullity. We are equally satisfied that it was not the intention that the election board or other canvassing body should sit in judgment upon the conduct of the clerk in preparing the official ballot, and on account of his mistake or misconduct reject votes cast by persons who are themselves free from fault or wrongdoing. A purpose so foreign to the theory of the law and so abhorrent to a sense of justice should not be attributed to the legislature except in consequence of language so explicit as to admit of no other interpretation. The provision quoted falls far short of being such an expression.

The judgment is affirmed.