Allen, J.
(dissenting). Certain members of the court dissent from the majority in this case for two reasons: First, that the right of the voter to vote for whom he pleases cannot be curtailed because of irregularity or illegality in the nomination; second, that the filing of the nominating petition, its acceptance, and the placing of the ticket on the ballot, without objection until after the holding of the election, constitute a waiver of defects in the nomination.
In this case Walter C. Linehan was the regular nominee for council on the Republican ticket, and John F. Sheehan was the regular nominee on the Democratic ticket, Sheehan’s name also appearing on the ballot as the candidate on the Independent ticket. No objection had been made to such nomination on the Independent ticket according to the statute, in any way, nor at any time, prior to the election; and this occurred under provisions of a statute which read, in so far as pertinent, as follows :
Section 5005, General Code: “When so filed, certificates of nomination and nomination papers shall be preserved and be open, under proper regulations, to public inspection. If in apparent conformity with the provisions of this chapter, they shall be deemed to be valid unless objection thereto is duly made in writing! within five days after the filing thereof.”
In the opinion in the case of State, ex rel. Conner, v. Noctor, 106 Ohio St., 516, 140 N. E., 878, this court held that the action of the election officials in placing the ticket on the ballot could not be said to be in apparent conformity with the provisions of the *406 law when there are no such provisions, and therefore the writ prayed for was denied.
On the facts, the ease of State, ex rel. Conner, v. Noctor, supra,, differs from this case. In the Conner case, the evidence showed that the name of the relator appeared on the ballot in two places, namely, on the Democratic and Independent tickets, with a cross-mark in front of relator’s name on both tickets on each of seven ballots which were afterward contested. In that ease the seven ballots had been disputed and not counted, and the result of the election turned upon whether these seven ballots were accepted or rejected. In this ease there were 16 ballots similarly marked for Sheehan, but their acceptance or rejection in no wise affected the result of the election, and the 521 votes regularly cast and marked for Sheehan upon the Independent ticket had been undisputed, counted, and returned by the election boards of the various precincts. It might therefore be argued that the opinion in the case of State, ex rel. Conner, v. Noctor, supra, is not decisive of the question.
However, from the standpoint of the illegality of the nomination the cases are exactly parallel, and it must be admitted that if State, ex rel. Conner, v. Noctor is right it controls the decision here. That the position of the majority of the court in the Conner case has some logic, if the case is viewed simply from the standpoint of the statute, we admit, although the weight of case authority is against the holding, as> will be shown later. We ground our dissent mainly upon a more fundamental reason, namely, that entirely apart from the provisions of Section 5005, General Code, a voter who has indi *407 cated his choice upon a ballot, apparently regular on its face, cannot be disfranchised because he votes for a candidate nominated in a method unauthorized by law. And this is true because the power of the voter to vote for whom he pleases is a constitutional right uniformly recognized, which cannot be curtailed.
At the election questioned here, 521 voters cast 'their ballots in due form for Sheehan. If the decision heretofore announced by the majority of the court is to hold, these voters are to have their ballots discarded, not because of misconduct on their part, not because of irregularity in their marking of the ballot, but because a name was placed upon the ballot by a method unauthorized by law.
As no objection was filed to this apparent nomination before the election, the voters naturally considered that the nomination had been made in due course and cast their ballots in accordance therewith. The majority of the court hold that their votes cannot be counted. And yet, if these 521 persons had chosen to write Sheehan’s name upon the ballot without his being nominated at all, they could have done so legally; for the fact that a person has not been nominated does not preclude electors from voting for him. 20 Corpus Juris, 105.
It is the general rule that the qualified electors have all political power, and this must be exercised through the ballot. Any limitations of their right to vote for any person eligible for such office would be inconsistent with that governmental power conferred upon the electors.
Judge McCrary in his work on Elections (4th Ed.), Section 700, says:
*408 “The statutes of most of the states expressly permit the voter to cast his ballot for the person of his choice for office, whether the name of the person he desires to vote for appears upon the printed ballot or not. Statutes which deny the voter this privilege are in conflict with the constitutional provision guaranteeing the right of suffrage to every citizen possessing the requisite qualifications, and are void. Legislatures may provide for the printing of an official ballot and prohibit the use of any other, but they cannot restrict the elector in his choice of candidates, nor prohibit him from voting for any other than those whose names appear on the official ballot.”
The same rule is expressed in 10 Am. & Eng. Ency. of Law (2d Ed.), 587, after discussing provisions for nominating candidates under the Australian ballot system:
“Thus they are not unconstitutional, because they provide for legal nominations and require them to be made in a certain way in order to entitle a candidate to have his name printed on the official ballot, provided the voter is allowed by writing on the ballot to vote for others than those nominated, if he sees fit. But, as the Constitutions guarantee to voters the right to vote for whom they please, a law restricting the right to vote to those candidates whose names appear on the official ballot is to that extent unconstitutional.”
Cooley, in his work on Constitutional Limitations (7th Ed.), p. 912, says:
“The system of ballot voting rests upon the idea that every elector is to be entirely at liberty to vote for whom he pleases and with what party he pleases, *409 and that no one is to have the right, or be in position, to question his independent action, either then or at any subsequent time.”
The question was before the Supreme Court in Florida, in State, ex rel. Atty. Gen., v. Billon, 32 Fla., 545, 579,14 South., 383, 393 (22 L. R. A., 124), where that court declared:
“There is no doubt in our minds about the right of the Legislature to prescribe an official ballot and to prohibit the use of any other, and the provisions of the act in reference to printing the names of candidates regularly nominated by a convention, mass meeting, or primary election, or who run as independents, are valid. But the Legislature cannot, in our judgment, restrict an elector to voting for some one of the candidates whose names have been printed upon the official ballot. He must be left free to vote for whom he pleases, and the Constitution has guaranteed to him this right. If the Legislature can restrict the voter to some candidate whose name is printed on the official ballot, then it may prescribe such regulations for getting the names of candidates on the ballot as will completely destroy the liberty of choice.”
Again, in Sanner v. Patton, 155 Ill., 553, 563, 40 N. E., 290, 292, we find:
“It is also said that ample provision has been made in the act whereby candidates may be nominated, and thus be entitled to have their names placed on the ticket, and that it is the intention of the act that no vote should be cast for a person who was not nominated. If such was the intention, why did not the Legislature say so, and why did it say directly the contrary? "What, it may be asked, is *410 there so sacred in the nomination of a candidate for office by a political caucus that a voter should be compelled to vote for a nominee of the caucus or else be deprived of the elective franchise? * * * The Legislature does not possess the power to take away from a resident citizen the right of suffrage unless he has been convicted of an infamous crime. Nor can the Legislature do indirectly what they cannot do directly, and yet, if the construction contended for by appellee be the correct one, the voter is deprived of the constitutional right of suffrage. He is deprived of the right of exercising his own choice, and when this right is taken away there is nothing left worthy of the name of the right of suffrage— the boasted free ballot becomes a delusion.”
In Bowers v. Smith, 111 Mo., 45, 52, 20 S. W., 101, 102 (16 L. R. A., 754, 33 Am. St. Rep., 491), the Supreme Court of Missouri thus expressed itself on the subject:
“By our Constitution, general elections are held at certain fixed dates, and the right of suffrage is expressly secured to every citizen possessing the requisite qualifications. The new ballot law cannot properly be construed to abridge the right of voters to name their public servants at such elections, or to limit the range of choice (for constitutional offices) to persons nominated in the modes prescribed by it. Nominations under it entitle the nominees to places upon the official ballots, printed at public expense, but the Missouri voter is still at liberty to write on his ballot other names than those which may be printed there.”
In People, ex rel. Bradley, v. Shaw, 133 N. Y., 493, 497, 31 N. E., 512 (16 L. R. A., 606), the court said:
*411 “But that it was in no wise intended to prevent the voter to vote for any candidate whom h© chose is evident from the further provisions of the law [Section 25] that ‘the voter may write or paste upon his ballot the name of any person for whom he desires to vote for any office.’ Indeed, to hold otherwise would be to disfranchise, or to disqualify, the citizen, as a voter or a candidate, and, in my opinion, to affect the law quite unnecessarily with the taint of unconstitutionality in such respects.”
In Lacombe v. Laborde, 132 La., 435, 61 South., 518, the court held that, while under the statutes a defeated candidate at a primary could not run at the election, the voters could vote for him by writing his name in upon the ballot, stating that otherwise the court would be disregarding the will of the people as expressed by their votes. The court says in the Lacombe case that if a citizen chooses to vote for a candidate defeated at the primary, unless the law is positive that he should not vote for such a candidate, he certainly should not be made to lose his vote. To the same general effect are State v. Ratliff, 108 Miss., 242, 66 South., 538; State, ex rel. Dithmar, v. Bunnell, 131 Wis., 198, 110 N. W., 177, 11 Ann. Cas., 560; Montgomery v. O’Dell, 67 Hun., 169, 22 N. Y. Supp., 412; and People, ex rel. Goring, v. Village of Wappingers Falls, 144 N. Y., 616, 39 N. E., 641.
It is even held that when illegality enters into the nomination and the nominee’s name appears upon the ballots, and he has received the votes of the electors, they shall not be rejected.
A striking case to this effect is that of State, ex rel., v. Bunnell, supra, the second and third paragraphs of the syllabus of which read:
*412 “2. At an election to fill the office of county judge for an unexpired term and also for a new term thereafter, separate nomination papers for each term were necessary; and after a nomination paper specifying merely the office of ‘county judge’ had been signed the candidate had no right to change it by interlining the words ‘for the unexpired term.’
“3. After the name of a candidate has been placed upon the official ballot and the election has taken place, the fact that there had been a wrongful alteration in his nomination papers does not of itself require the rejection of the votes cast for him at the election.”
It appears from the facts in this case that after several nomination papers were signed by the qualified electors they were changed by interlining the words “for the unexpired term.” The court said (131 Wis., at page 204, 110 N. W., 180, 11 Ann. Cas., 560):
“For the person therein named, after such signatures had been obtained, to change the name of the office therein prescribed was to practice a gross fraud upon such signers of the nomination papers.”
Yet the court held that the right of the elector to exercise free choice at the election was paramount, and that the fact that the nomination papers had been changed did not of itself require the rejection of the votes cast for the defendant.
In the case of Bowers v. Smith, 111 Mo., 45, 20 S. W., 101, 16 L. R. A., 754, 33 Am. St. Rep., 491, quoted above, the plaintiff contended that the entire returns from Sedalia should be thrown out of the final count. He alleged as one of the principal reasons for this contention that the official ballots printed by the *413 county clerk for use at the voting places in that city contained, among others, the names of the nominees of the Union Labor party, and that that political party had not polled 3 per cent, of the entire vote at the last previous general election; that is to say, he urged that under the Missouri law it was illegal to place the names of the nominees of the Union Labor party upon the ticket.
The court held that such a construction of an election law as would permit the disfranchisement of large bodies of voters because of the error of a single official should not be adopted where the language is fairly susceptible of any other construction.
It is difficult to understand why, if a voter can vote for a person who has not been nominated, or who has actually been illegally nominated, and have his ballot counted, he cannot vote for a person who has had an invalid nomination, a nomination which does not exist in law because of the fact that there is no law authorizing it, and have his ballot counted.
So definitely fixed in our American jurisprudence is the doctrine that the elector may vote for whom he chooses that it is the general rule that the Legislature could not have prohibited these voters from voting for persons not named on the ballot; that is, it is held by the weight of authority not to be within the power of the Legislature to restrict electors in their choice of candidates nor to prohibit them from voting for persons whose names are not printed on the ballot. 20 Corpus Juris, 141.
In the case of Littlejohn v. People, ex rel., 52 Colo., 217, 121 Pac., 159, Ann. Cas., 1913D, 610, the court held as follows in the pertinent part of the syllabus:
*414 “Under the Constitution (Section 5, Art. 21; Section 1, Art. VII) every qualified elector has the equal right to cast a ballot for the person of his own selection, and nothing can lawfully prevent the exercise of this right. Legislative regulation of the franchise cannot extend to deny its exercise, or trammel by conditions so difficult or inconvenient as to amount to a denial. Accordingly held that portion of Section 5919 of the Revised Statutes which provides that an election for school directors ‘no person other than those whose names appear upon the ballot’—prepared by the secretary— ‘shall be voted for,’ is unconstitutional.”
The court based its decision upon the principle that a law which coerces an elector to cast his vote in a particular way violates the constitutional rights of the elector.
If we are to hold that the 521 voters who voted for Sheehan as the Independent candidate could not vote for him as such Independent candidate, when his name appeared upon the ballot in regular form, are we not coercing them into voting only for people nominated in a particular way, bearing always in mind the fact that any objections to the appearance of Sheehan’s name upon this ballot as .the Independent candidate could have been made before the election?
Moreover, that these votes should be counted upon a ground exactly contrary to that of the decision in the Conner case, supra, is held by the weight of authority. The Conner case decided that a nomination identical with the one considered here was not in apparent conformity with law. That voting for a candidate nominated without authority of law *415 is in apparent conformity with the provisions of law, when there is no constitutional law existing under which the nomination could have been made, was held recently by the Supreme Court of Illinois in the case of Swvney v. Peden, 306 Ill., 131, 137 N. E., 405. This case arose under a statute almost identical with the statute of Ohio. Section 10 of Chapter 46 of the Revised Statutes of Illinois, 1899, reads as follows:
“The certificates of nomination and nomination papers being so filed and being in apparent conformity with the provisions of this act, shall be deemed to be valid, unless objection thereto is duly made in writing.”
The facts in the case were that a county convention composed of delegates of the Republican party nominated candidates for office and certified them. The certificate was filed in the office of the city clerk of Chicago and transmitted to the board of election commissioners by the clerk. The names of the persons mentioned in the certificate were printed on the official ballot to be voted at the coming election, in the column under the caption “Republican.” The appellants in the case contended that the nominations for the offices were required to be made at a primary election, in the manner provided by the primary election law, and could not be made otherwise; that such primary election must be held three weeks before the date of the election; and that no convention could lawfully nominate a candidate to fill a vacancy in office.
The court in considering the facts said (306 Ill., at page 134,137 N. E., 406):
“Reduced to its last analysis, the contention of *416 appellants is that appellees were never lawfully nominated; that the certificate filed with the board of election commissioners was invalid and did not authorize the commissioners to cause the names of appellees to be placed on the ballot to be voted at said election. Appellees received a majority of the votes cast for candidates for said office and were elected unless the method of their nomination invalidates their election. * * *
“The nominations of appellees we do not think were made in a lawful manner and by a body authorized to make such nominations. They were candidates of a political party for a municipal office for the city of Chicago, but their nominations were made by a county convention of their political party. A county convention composed of delegates of a political party was no more authorized to nominate candidates for city offices for the city of Chicago than would be a state convention composed of delegates from the entire state. *' * * We see no escape from the conclusion that the nominations of appellees were unlawful and the certificate of their nomination invalid. No objection was made to it, and the election commissioners by virtue of it caused appellees names to be printed on the official ballot. The question then is presented whether in this contest the manner in which appellees’ names got on the ballot as candidates can be considered in determining who was elected.”
(This case is on all fours with the facts of the instant case. In the Swiney case no law existed authorizing delegates to a county convention to nominate candidates for office, nor to certify such nominations. No law existed authorizing such nom *417 inations to be placed upon the ballot, and because of the absence of any such legal authority the nominations were unlawful and the certificates invalid. The Supreme Court of Illinois held that such nominations were in apparent conformity to law, and that a candidate who failed to make objection to such certificates of nomination could not after the election question their validity. People, ex rel. Phillips, v. Strassheim, 240 Ill., 279, 88 N. E., 821, 22 L. R. A. (N. S.), 1135, likewise held that the title to the office of a successful candidate is not affected by a decision holding invalid the law under which the nomination is made after the election has been held.
It is in fact the general rule that objections relating to nominations must be timely made, otherwise they must be regarded as waived. It is too late to make them after the nominee’s name has been placed on the ballot, and he has been elected to the office. His election cannot be impeached on the ground that statutory requirements, regarding nominations were not complied with in his case, or that his nomination was procured by unlawful means, after the time for filing objections had passed. In the absence of fraud, a certificate of nomination, which is regular in form, and to which no objections are filed, cannot be attacked.
Thus where a candidate for public office before election makes no objection to the certificate of nomination of his opponent, when the statute provides for the time and mode of presenting such objections, he should be regarded as waiving all objections that may exist to the presence on the official ballot of any names not properly entitled to be there. 20 Corpus Juris. 132, Section 152.
*418 In the case of Peabody v. Burch, 75 Kan., 543, 89 Pac., 1016, 12 Ann. Cas., 719, a certificate of nomination had been duly filed in a city election by the president and secretary of the convention of the People’s party, but no certificate of any kind was filed in behalf of the Citizens ’ party. This certificate was required by law. Nevertheless the city clerk caused both tickets to be printed upon the official ballot. A majority of the voters marked their ballots in favor of the candidates on the Citizens’ ticket, and they were declared elected. A candidate on the People’s ticket claiming to have been elected police judge sued to enforce his right to that office. His contention was that as the Citizens ’ ticket was printed upon the ballot in direct disobedience of the statute, ballots marked in favor of that ticket should have been rejected. The adoption of that rule would have resulted in the plaintiff’s election. In deciding the above case the court said (75 Kan., at page 544, 89 Pac., 1016, 12 Ann. Cas., 719):
“It is true that the statute expressly forbids the placing of any names on the ballot excepting such as are brought to the notice of the clerk by proper certificates, in these terms: ‘All nominations made and certified in accordance with the provisions of this act, and none other, shall be printed on the official ballot.’ ”
The third paragraph of the syllabus in that case reads:
“The fact that the officer who is charged with the duty of preparing an official ballot wrongfully causes to be printed thereon the ticket of a political party which has forfeited its right to such representation by a failure to file a certificate of nomina *419 tion will not justify a refusal to count ballots marked in favor of such ticket.”
To the same general effect are Allen v. Glynn, 17 Colo., 338, at 345, 29 Pac., 670, 15 L. R. A., 743, 31 Am. St. Rep., 304, and Attorney General v. Campbell, 191 Mass., 497, 501, 78 N. E., 133.
These holdings are in line with the common sense view that the deciding factor with regard to determining whether a vote shall be counted is whether or not it indicates the intention of the voter. This principle is imbedded in our own statute, which provides at Section 5070, Subsection 9 :.
“No ballot shall be rejected for any technical error which does not make it impossible to determine the voter’s choice.”
Numerous authorities from other jurisdictions, where the same or similar questions have been before the court of last resort, hold a contrary doctrine to the one laid down by this court in the Conner case.
The Minnesota Supreme Court, in a case decided in 1921, Johnson v. Bauchle, 149 Minn., 144, 182 N. W., 987, had before it the question whether a candi - date whose name was placed on the official ballot by petition in a manner which was prohibited by the Minnesota statute is elected and entitled to his office if he receives a plurality of the votes. The court decided that he was so entitled. The court says (149 Minn., at page 145, 182 N. W., 987):
“The printing of Johnson’s name on the official ballots was prohibited. Sections 333 and 371, G. S., 1913. * * * The most that can be said is that the officials charged with the duty of printing *420 and distributing ballots innocently misconstrued the law. The law recognizing that officials may err or make mistakes has provided safeguards and means to correct such errors or mistakes before the ballots aré given to the voters. * * * The voters are not bound at their peril to ascertain who filed properly for. nomination at the primary, or who were successful there, or if, since then, a vacancy occurred which could be filled. * * * It is more reasonable to say that, when at the polls the voter is handed an official ballot, he may rightfully assume that the name of every candidate for office appearing thereon is lawfully there, and that those charged with the duty of furnishing a proper ballot have not subjected themselves to the severe penalty which the law imposes for a violation of that duty. * * *”
The court cites Blackmer v. Hildreth, 181 Mass., 29, 63 N. E., 14; People, ex rel. Hirsh, v. Wood, 148 N.. Y., 142, 42 N. E., 536; Baker v. Scott, 4 Idaho, 596, 43 Pac., 76; State v. Bernholts, 106 Iowa, 157, 76 N. W., 662; State, ex rel. Brooks, v. Fransham, 19 Mont., 273, 48 Pac., 1; Bragdon v. Navarre, 102 Mich., 259, 60 N. W., 277; Miller v. Pennoyer, 23 Or., 364, 31 Pac., 830; and State, ex rel. Dithmar, v. Bunnell, 131 Wis., 198, 110 N. W., 177, 11 Ann. Cas.. 560.
It. is difficult to see how a vote cast for a candidate nominated in violation of existing law stands on any different plane than a vote cast for a candidate nominated without authority of law.
In State, ex rel., v. Fransham, supra, which was a quo warranto proceeding, the court held that, unless correction was made before an election, ballots .cannot be rejected because a nomination has not *421 been properly made. The court further said (19 Mont., at page 287, 289, 48 Pac., 6):
“The ballot was the only one authorized to be banded to the voter, and to be used by him. He could make and return no other without violating the law. The voters were innocent and honest in their acts. These propositions are indisputable. * * * ‘We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even willful misconduct of election officers in performing the duty cast upon them.’ ” (Citing People, ex rel. Hirsh, v. Wood, 148 N. Y., 142, 42 N. E., 536).
The Supreme Court of Iowa, in State, ex rel., v. Bernholtz, supra, held that when a ballot had been delivered to a voter and cast by him the misconduct of election officials could not invalidate the vote.
In Bragdon v. Navarre, supra, the Michigan Supreme Court had before it a case where a relator had received a majority of the votes. It was contended that the relator was not the nominee of any party and that the ticket was not properly certified and not entitled to a place on the ballot, and consequently that such ticket should not have been counted for relator. The court said, at page 260:
“The voter finding the ticket upon the ballot cannot be required to determine its regularity at his peril. * * * He may safely rely upon the action of the officers of the law, who he has a right to suppose have done their duty.”
After all, what is the purpose of nomination? It is to place before the voters names on which and for which to vote. If the elector votes on names irregularly nominated, but not objected to, that is *422 immaterial, for the names have been placed before him and the nomination is merged in the vote.
The cross-mark, which is now put upon the ballots, is probably a derivation from a system in which the name itself was written on a ballot. The cross-mark is a more convenient and quicker method of naming the voter’s choice than the old system. If these voters could name Sheehan by writing his name on the ballot, why can they not name him by putting the cross before his name, which is tantamount to writing his name?
Turn it any way we please, if the decision of this court holds, the general rule that an elector may vote for whom he pleases without losing his vote, is, to a considerable extent, abrogated in this state.
For these reasons we dissent from the judgment of the court.
Marshall, C. J., and Wanamaker, J., concur.