JOHN A. LINDSTROM v. THE BOARD OF CANVASSERS OF MANISTEE COUNTY.

*Elections—Irregularities—Ballots—Directory provisions of statute.*

1. The provision of section 36 of the election law of 1891, voiding all ballots " which shall bear any distinguishing mark or mutilation," was intended to provide against voters marking the individual ballot which they cast, in such manner as to distinguish it.

2. But one vignette is provided for, to be printed on ballots to be used at a general election, under the election law of 1891.

3. A voter who votes a ticket appearing upon the official ballot, duly certified by the board of election commissioners, cannot be disfranchised by the action of the board in printing a separate vignette at the head of the county ticket, or by a failure to have a proof copy of the ballot on file at the office of the county clerk, and open for inspection, at least 10 days prior to the election; nor can a candidate who is not shown to have participated in any fraud be defeated of his election on these grounds.

*Mandamus.* Argued December 23, 1892. Denied December 24, 1892, and opinion filed January 18, 1893.

Relator applied for *mandamus* to compel a recount of the votes cast at the November election for the office of county treasurer. The facts are stated in the opinion.

*McAlvay & Grant* and *P. T. Glassmire,* for relator.

*A. J. Dovel* and *Morse, McGarry & McKnight*, for respondent.

PER CURIAM. The relator asks for a *mandamus* to compel a recount of the votes cast at the late election for the various candidates for the office of county treasurer. The relator was a candidate for the office, but on the official returns is shown to have received less than a plurality.

Among other statements in the petition is the following:

" Your petitioner further shows that the said inspectors in all of said wards and townships counted votes for said Peter Friske [relator's opponent] which were voted upon tickets which were printed upon ballots that bore distinguishing and distinctive marks, other than the legal and recognized vignette, and were void and illegal, and should not have been counted."

Attached to the return of the respondent is a copy of the official ballot furnished to the voters of Manistee county, upon which was printed six tickets,—a Republican ticket, Democrat ticket, Regular Independent Democrat, Independent Democrat, Prohibition, and People's Party ticket. At the head of the Regular Independent Democrat ticket is printed the regular Democratic vignette. At the head of the county ticket, however, appears an additional vignette, not corresponding to the one placed at the head of the ticket. So at the head of the so-called "Independent Democrat" ticket is placed the regular Democratic vignette, and at the head of the county ticket another vignette, not corresponding to the one placed at the head of the ticket.

It is contended by the relator that these two tickets are illegal, and that the votes cast for the candidates appearing thereon should not, in any instance, have been counted; and it was conceded at the argument that, if these votes were not to be counted, relator had received a plurality of the legal votes cast; and by the relator it is conceded that,

if these votes are to be counted, his competitor received a majority of the votes cast, and therefore a recount would not aid him.     The return shows that the official ballot was properly certified under the law by the election commissioners, and it is also claimed that it was duly certified by the proper committees.     It is the contention of the relator that but one vignette is provided for, to be printed on ballots which are to be used at a general election, and this would appear to have been the legislative intention.     Act No. 190, §§ 9, 10, Laws of 1891.     It is also claimed by the relator that the ballots were not open to inspection, as required by section 11 of the act, for 10 days before the election.

The question presented is whether the voter who votes a ticket appearing upon the official ballot, duly certified by legal authority, can be disfranchised by the failure of the election commissioners to comply strictly with the statute, and whether a candidate who is not shown to have participated in any fraud can be defeated of his election on the same ground.

It may be stated, as a general rule, that the provisions of law relating to the manner of conducting elections will not be held so far mandatory as that a departure therefrom will result in the disfranchisement of a district or a class of voters, or the defeat of a candidate himself free from fraud, except in cases where the legislative intent that such departure shall have that effect is clearly and unequivocally expressed.     This is a rule which has been applied in this State.

In *People v. Bates,* 11 Mich. 364, it appeared that tickets cast for city officers were not found in the box provided for that purpose, but were found in the State and county box, and were counted by the inspectors.     It was said by the Court that the two elections, though held upon the

same day, were distinct and independent of each other, as much as if they had happened on different days.

"But, though thus distinct, and the ballots to be deposited in separate boxes, yet, as both were held together under the supervision of the same inspectors, with both boxes before them for the reception of ballots, the inspector receiving the ballot might be liable, by honest mistake, occasionally to deposit a ballot in the wrong box; and, if he understood that the ballots found in the wrong box were in no case to be counted, he might do the same thing for a fraudulent purpose. But the elector is not to be deprived of his vote either by the mistake or fraud of the inspector in depositing it in the wrong box, if the intention of the voter can be ascertained with reasonable certainty. To hold otherwise would be to give more effect to the letter than to the manifest purpose of the statute."

In *Adsit v. Secretary of State*, 84 Mich. 420, it was held that the vote of the people could not be defeated by the failure on the part of the Secretary of State to give notice of an election, and that the provision requiring such notice was directory, merely, and not mandatory.

So it is stated generally in McCrary on Elections (section 193):

"Those provisions of a statute which affect the time and place of the election, and the legal qualifications of the electors, are generally of the substance of the election, while those touching the recording and return of the legal votes received, and the mode and manner of conducting the mere details of the election, are directory. The principle is that irregularities which do not tend to affect results are not to defeat the will of the majority. The will of the majority is to be respected, even when irregularly expressed. The officers of election may be liable to punishment for a violation of the directory provisions of a statute, yet the people are not to suffer on account of the default of their agents."

But it is said that section 36 of the act provides that in the canvass of the votes any ballot which shall bear any distinguishing mark or mutilation shall be void, and shall

not be counted, and it is insisted that the ballot in question bears a distinguishing mark.    The evident intent of this provision was to provide against voters marking the individual ballot which they cast, in such manner as to distinguish it.    To place the construction upon this provision contended for by relator would result in excluding from the count all the ballots cast in Manistee county; for upon every ballot appeared these so-called distinguishing marks, namely, the unauthorized vignettes.

An announcement in accordance with the views herein expressed has been heretofore made, and the writ denied.

DURAND, J., who has retired since the formal decision, took no part in the preparation of this opinion.