[No. 2259, Feb. 28, 1919.]

STATE ex rel. READ v. CRIST.

[Rehearing Denied March 24, 1919.]

SYLLABUS BY THE COURT.

1. Under section 1 of article 7 of the Constitution, it is competent for the Legislature to provide, as it has done by section 1993, Code 1915, that ballots other than those printed by the respective county clerks shall not be cast, counted or

canvassed in any election, and this statute prevents the casting, counting, or canvassing of any ballots not emanating from the proper official source.                               P. 181

2.   No construction of constitutional or statutory provisions is to be indulged which will defeat or unduly restrict or obstruct the free exercise of the elective franchise, unless the same is compelled by the strict letter of the law, and provisions relating to the exercise of such right are to be interpreted as directory rather than mandatory.          P. 180

3.   Constitutional and statutory provisions calculated to protect the secrecy and purity of the ballot are to receive favorable consideration.                            P. 180

Appeal from District Court, Santa Fe County; Reynolds, Judge.

Proceedings by the State of New Mexico, on relation of Alexander Read against Jacob H. Crist.   Judgment for respondent, and relator appeals.   Reversed and remanded, with instruction to enter judgment of ouster against respondent.

A. B. RENEHAN and CATRON & CATRON, all of Santa Fe, for appellant.

Sec. 1993, Code 1915, is mandatory, not directory, and ballots cast in violation thereof were void.

Slaymaker v. Phillips, 47 L. R. A. 842; Art. 7 State Const.; Art. 22, Sec. 4, State Const; Gomez v. Timon, 128 S. W. 656; Bowers v. Smith, 16 L. R. A. 754; Esquibel v. Chaves, 12 N. M. 482; People v. Rinehard, 161 Mich. 585, 126 N. W. 704; Horsefall v. School District, 143 Mo. App. 541, 128 S. W. 33, and cases there cited; Slenker v. Engel, 250 Ill. 499, 95 N. E. 618; Catlett v. Knoxville, etc. R. Co. 112 S. W. 559; People of State of New York v. John A. Nicholas, 14 L. R. A. 625; James W. Cole v. George Tucker, 29 L. R. A. 668; State ex rel. Runge v. Anderson, 42 L. R. A. 239; Common Council of Detroit v. Peter Rush, 10 L. R. A. 171; State of Louisiana ex rel. Mize v. McElroy, 16 L. R. A. 278; Taylor v. Bleakley, 28 L. R. A. 683; Blandon v. Philadelphia, 60 Pa. State, 464; 2 Lewis South. Stat. Con. 1142 Sec. 633;

2 Lewis South. Stat. Con. 1136 Sec. 627; Stratton v. Hulings, 7 Ind. 144; Union Bank v. Laird, 2 Wheat. 390; Dale v. Erwin, 78 Ill. 170; Clark v. Robenson, 88 Ill. 498.

JACOB H. CRIST, per se, E. P. DAVIES, of Santa Fe, of counsel.

Sec. 1993, Code 1915 is unconstitutional because it impedes, impairs and abridges the free exercise of the constitutional right of suffrage.

Cooley's Const. Lim. (7th Ed.) 907, 913, 920, 929, 940; McCrary on Elections, Secs. 126, 133; 9 R. C. L. 983; Capen v. Foster, 13 Pick. 485; Monroe v. Collins, 17 Oh. St. 665; 7 L. R. A. 99; Morris v. Powell, 125 Ind. 281; McCafferty v. Guczer, 59 Pac. 1091; Sears v. Cotterel, 5 Mich. 283; Delle v. Kennedy, 49 Wis. 555, State v. Baker, 38 Wis. 71; Daggett v. Hudson, 43, Ohio, Iowa, 367; Monroe v. Collins, 17 Ohio St., 665; White v. Multanowah Co. 13. re., 317; O'Connell v. Mathews, 177 Miss. 521.

Where mandatory provisions of statutes are disobeyed in the preparation of ballots the will of the voters, on that account cannot be disregarded.

Peabody v. Burch, 89 Pac. 1016; Taylor v. Taylor, 10 Minn. 107; Ex parte White, 28 S. W. 542.

Provisions of Section 1993, Code 1915, are wholly directory.

McCrary on Elections, Sec. 228; Duncan v. Shenk, 109 Ind. 30; Kink v. Rhodes, 46 Cala. 339; Peabody v. Burch 89 Pac. 1016; Town of Grove v. Haskell, 104 Pac. 56; Moyer v. Van De Vantar, 41 Pac. 62; Eaton v. Brown, 17 L. R. A. 697; State v. Fransham, 17 Mon. 273; Lundstrom v. Bd. of Canvassers, 94 Mich. 467; Boyd v. Mills, 25 L. R. A. 456; Parvin v. Winbly, 130 Ind. 561; Bowers v. Smith, 111 Mo. 61; Herrington v. Crighton, 164 Pac. 537; Moyer v. Van De Vantar, 12, Wash. 377;

Gilliland v. Schuyler, 9 Ks. 569; Parker v. Orr, 158 Ill. 609; Kirk v. Rhodes, 46 Cal. 405; State v. Bernholtz, N. M. W. 662.

## OPINION OF THE COURT.

PARKER, C. J.   At the general election in November, 1916, the relator, Alexander Read, was the Republican candidate for the office of district attorney for the First Judicial District of the state, and the respondent, Jacob H. Crist, was the Democratic and Fusion candidate for said office.   The respondent was declared by the state canvassing board to have been elected by 85 votes over the relator, and was given his certificate of election by that body.   It appears from the findings of the court that 3,000 or 4,000 ballots, fac similes of the regular state and Santa Fe county Republican ballots, of said general election, and which could not be distinguished from the regular ballots, were printed a few days before said election, upon the order of one George Albright, assistant chairman of the Republican state central committee, and were delivered a few days before said election to the Republican State Central Committee.   Said ballots were not printed·by order of, nor caused to be printed by the county clerk of Santa Fe county, nor under the supervision of the chairman of either the Republican county central committee or executive committee, nor were they provided by the county clerk of Santa Fe county, nor were they printed at the expense of Santa Fe county, nor were they distributed under the supervision of the chairman of the Republican county committee of Santa Fe county.   A few days before the said general election the said ballots were delivered by the officers or employes of the Republican state central committee to one Nicolas Sena and to Earl Goodwin, who in turn delivered the same to one Celso Lopez.   A few days before said general election the said ballots were by the said Celso Lopez and Nicolas Sena and their employes pasted over in part with stickers or pasters of certain Democratic candidates and certain independent Republican candidates by pasting over the name of each Republican candidate, beginning with and including the name of Ben-

jamin F. Pankey, down to the end of said tickets, including the name of relator, the stickers or pasters of the opposing Democratic or Independent Republican candidate and pasting over the name of relator with a paster or sticker the name of the respondent for the office of district attorney for said judicial district.

These ballots so pasted and prepared were upon the evening before election delivered by Celso Lopez to Romolo Lopez, Nicolas Sena, and Jacobo Montoya, to be by them distributed unto the voters on the following day, the day of election, in precincts 17, 3, and 18, respectively of the county of Santa Fe, and the said Celso Lopez retained a portion of said ballots himself, to be by him and his workers distributed to the voters in precinct No. 4, of Santa Fe county, and the said Nicolas Sena, in addition to said ballots, had other ballots delivered to him by the Republican state central committee, which were by him pasted in the same manner and form as heretofore mentioned. These ballots throughout the day of election were given out and distributed to the voters by the workers of the Independent Republican party at the polls, and many of said ballots were voted without change and many were changed by voters and then voted. A sufficient number of these votes were cast to elect the respondent. In other words, if the said ballots are to be held illegal and are not to be counted for the respondent, the result will be that the relator was elected to the office of district attorney. The court found, however, that no evidence had been offered to show that any voter who voted at said election was deceived by said ballots, or that he thereby voted for any candidate other than the one of his choice.

At the close of relator's case respondent demurred to the evidence, which demurrer was formally sustained, and the cause was dismissed, and judgment awarded in favor of the respondent for costs. The case is here upon appeal from that judgment.

Relator relies to reverse the judgment upon a single

proposition arising out of a proper construction of section 1993, Code 1915, which is as follows:

"It shall be the duty of the county clerk of each county to provide printed ballots at the expense of the county for every election for public officers in which the electors or any of the electors within his county participate, and to cause to be printed in the appropriate ballot, the name of every candidate whose name has been certified to or filed with him in the manner provided for in this article, and no person shall accept a nomination to more than one office nor from more than one political party. Ballots other than those printed by the respective county clerks according to the provisions of this article shall not be cast, counted or canvassed in any election. Every ballot printed under the provision of this article shall be headed by the name and emblem of the political party by whom the candidates whose names appear on the ballots were. nominated, and each of said ballots shall contain only the names of the candidates nominated by said party. Said ballots shall be printed on the same kind of paper and of the same size and each ballot shall have printed on the back thereof an indorsement substantially as follows: 'Official ballot, election held * * *' [Insert date] with a facsimile signature of the county clerk. The printing and distributing of all ballots mentioned in this article shall be done under the supervision of the chairman of the county committees of the political parties of the county in which any such election is to be held: Provided, however, this section shall not apply to an election of justice of the peace or school directors."

The respondent in support of the judgment relies upon two propositions: First, that the provisions of the statute are directory and not mandatory; and, second, if they are mandatory, the statute is unconstitutional, because it impedes, impairs, and abridges the free exercise of the constitutional right of suffrage.

[2, 3] In approaching a determination of this case, certain fundamental considerations may well be brought into view. In the first place it may be said that the elective franchise is one of the highest rights of the citizen. It is the means of participation by the people in representative government. No construction of constitutional or statutory provisions is to be indulged which will defeat or unduly restrict or obstruct the free exercise of the right unless the same is compelled by the strict letter of the law. Provisions regulating the exercise of the right,

JANUARY TERM, 1919                          181

State ex rel. Read v. Crist, 25 N. M. 175.

therefore, are to be interpreted as directory rather than mandatory, unless the language used compels a different determination. On the other hand, provisions calculated to protect the secrecy and purity of the ballot are to receive favorable consideration.

[1.] It is first to be observed that no voter was deceived by the spurious ballots furnished him at the polls. So far as appears the result of the election was exactly as desired by the voters. It was largely upon these con-·siderations that the learned judge below, now, by the way, a justice of this court, sustained the demurrer to the evidence and dismissed the proceeding, as appears from his opinion. He further held that the statute was to be deemed directory rather than mandatory. On the other hand, in this connection, it may be well to consider what might happen at any election if spurious ballots may with impunity be furnished to the voter. In such case the door to fraud and imposition upon the voter and consequently upon the candidates is open, the security and certainty of elections are destroyed, and contests and controversies over the results of elections will abound. It is to avoid such results that legislation is enacted regulating the mode of conducting elections. In this connection a view of previous legislation of this territory is enlightening.

An old statute as amended in 1893 appeared as section 1633, C. L. 1897, and provided that any political convention might adopt some mark or designating device to be printed at the head of its ticket or ballot, and when such mark or device had been adopted and an imprint thereof, together with the names of the candidates nominated at said convention, had been placed upon the ticket or ballot and certified to by the presiding officer of such convention and filed with the probate clerk of the county, it was made unlawful for any other political convention, person, or persons to adopt or use any such mark or device for election purposes, or to cause the same to be placed or printed on any ticket or ballot without having printed in such ticket or ballot all of the names of the

candidates nominated by the convention adopting such mark or device. It further provided that it should be unlawful for any person or persons, after the adoption and filing of such mark or designating device, to print, utter, distribute, or circulate, or cause to be uttered, printed, or circulated, any ticket or ballot having thereon such mark or designating device with any name printed thereon other than the name or names of the candidates nominated by the political convention adopting such mark or device. The statute further provided that any person violating any of the provisions of the act was to be deemed guilty of a felony and punished as provided.

It is to be observed that this statute makes it a criminal offense to violate its provisions, but it does not provide that any such ballot cast at any election shall not be counted. It was under this statute that the case of Esquibel v. Chaves, 12 N. M. 482, 78 Pac. 505, was decided. In that case a spurious ballot by some persons unknown was circulated at the polls, having imprinted upon it the mark and device which had been adopted by the Republican party, and which contained the name of Chaves, who was not nominated by said party, instead of the name of Esquibel, who was nominated by said party. The result of that action it was claimed was to defeat Esquibel and elect Chaves. It was held by the territorial court that, inasmuch as the statute provided for a criminal prosecution and did not provide that the ballots should be rejected in such cases, the votes should be counted. The court, after reviewing many cases, says:

"We are of opinion, therefore, that the court below erred in holding that the ballots in contest were void as a matter of law. If the Legislature be of the opinion that as a matter of public policy, in addition to making the guilty party manager or worker subject to prosecution, the ballot should be rejected, it is for that body so to declare. This court cannot do so for it."

This conclusion was evidently sound under the statute as it then existed.

In 1903, chapter 59, the Legislature amended this sec-

tion 1633, C. L. 1897, by expressly providing, among other things, that any spurious ballot should nevertheless be counted and canvassed when cast by the voter. This act was passed prior to the decision in the Esquibel-Chaves Case, but that case was decided under the former statute.

In 1905, however, an entirely new feature was introduced into the election laws in this regard by chapter 127 of that session. That act provided that ballots other than those printed by the respective county recorders according to the provisions of the act should not be cast, counted, or canvassed. The act of 1905 was amended in some particulars by chapter 105, Laws 1909, but the provision prohibiting the casting, counting, or canvassing of any spurious ballots was retained in that act, and it now appears as section 1993, above quoted.

It thus appears, taking into consideration the previous legislation and the previous history of elections thereunder, that the legislative department of the territory deemed the provisions theretofore in force to be ineffective, and it thereupon adopted the more stringent provision that no spurious ballot should be cast, counted, or canvassed. This legislation was evidently in the interest of the purity of the ballot, and designed to protect the voter and the candidates from the frauds and deceptions of designing persons. A general rule was adopted which applies alike to ballots which may or may not contain the names of the candidates they purport to contain, viz.: That no ballot shall be cast, counted, or canvassed which does not emanate from a proper official source. This principle no doubt was, in the wisdom of the legislative department, determined to be best suited to protect the voters, candidates, and elections as a whole.

In view of this history of the legislation, and in view of the mandatory terms employed by the statute, there is no room for interpretation. The statute is in unequivocal terms that such ballots shall in no instance be cast, counted, or canvassed, and this court has no power to in-

terpolate any other meaning by way of construction. Under such circumstances, it is the plain duty of the court to follow and enforce the statute.

Such questions have often been considered by the courts in other jurisdictions.

In Slaymaker v. Phillips, 5 Wyo. 453, 40 Pac. 971, 42 Pac. 1049, 47 L. R. A. 842, the illegality in the votes cast consisted in their not having the names or initials of the judges of election upon the back, or upon any part of the ballot, and in two precincts none of the ballots were indorsed with the official stamp, though the stamp was placed upon the face of the ballots at the head of the ballots. The portion of the statute applicable is as follows:

"In the canvass of the votes any ballot which is not indorsed by the official stamp or has not the name or initials of the judge of election, as provided in this act, shall be void and shall not be counted."

The court said:

"There can be no question that this last provision is mandatory. The language that the ballots specified 'shall not be counted' requires no construction and admits of none. It seems to be as plain as any words that could be selected."

After stating that the court had examined many authorities, it further said:

"No respectable authority can be found denying the power of the Legislature to define and prescribe what shall constitute a lawful ballot; and the further proposition that no respectable authority can be found denying the power of the Legislature to enact that none but lawful ballots shall be received or counted. Such provisions our Legislature has enacted. The first subdivision of section 164 of the act of 1890 reads: 'No officer shall deposit in the ballot box any ballot except a lawful one. A lawful ballot is an official ballot officially stamped and marked with the initials or name of a judge of election, and offered by a qualified elector during the time of election.' And the authorities are unanimous to the effect that an illegal ballot will not be counted."

The court quotes from McCrary on Elections, at section 190, as follows:

"The language of the statute to be construed must be consulted and followed. If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular act in question goes to the merits or affects the result of the election or not. Such a statute is imperative, and all considerations of its policy or impolicy must be addressed to the Legislature."

The court quotes with aproval from Boyd v. Mills, 53 Kan. 594, 37 Pac. 16, 25 L. R. A. 486, 42 Am. St. Rep. 306, as follows:

"Where the law is explicit in prohibiting the counting of any ballot which does not conform to the requirements of the statute, that the courts will enforce the law as it reads without interposing their own judgment as to the reasonableness or unreasonableness of the requirements."

Upon rehearing an extended opinion was filed, which is very enlightening. In discussing whether the prohibition in question was repugnant to the Constitution as depriving the elector of his right to vote, the court said:

"We are asked to declare it so by what we must regard as an innovation in the law of statutory construction, opposed to the great weight of authority, and without foundation in sound reason. The distinguishing feature of this statute, as compared with former election laws, is the prevention of fraud. The construction contended for would destroy this feature. It would relegate the wronged and defrauded public entirely to the old remedies by criminal actions and election contests, prosecuted after the harm was done. These were the remedies which so often, and for so long a time, proved inefficient, and which the Legislature has endeavored to supplement by efficient preventive measures. The fear of punishment has never been found to be an efficient safeguard against political crimes. Let it once be known that the most mandatory provisions of our election law may be disregarded, and then there is at once destroyed all the security for the purity of elections which the law furnishes above other laws. Nothing more is required for the destruction of the barriers which Wyoming has erected for the protection of the honest verdict of her legal electors as expressed at the polls against the machinations of political tricksters and criminals. Nothing more is necessary to reopen the floodgates of fraud. Nothing more is necessary to restore the old order of things under which, in older communities, crime has reared aloft its brazen front in the sight of all the world; has defiantly stalked abroad in the light of the noonday sun; has placed its minions in positions of power, of trust, of honor, and of

profit; has educated its votaries to regard crime as honorable, and to think and expect that successful crime should be abundantly rewarded."

In Gomez v. Timon, 60 Tex. Civ. App. 311, 128 S. W. 656, the statute of Texas provided that votes at a local option election should be by official ballot, having printed or written at the top thereof the words "Official Ballot," and have written or printed thereon the words "For Prohibition" and "Against Prohibition." It further provided that the voters should be furnished by the presiding officer with one ballot, and should not be permitted to depart with such ballot, and that those favoring prohibition should erase the words "Against Prohibition" and those opposing it should erase the words "For Prohibition," and that none but official ballots should be received and counted. It was held by the Texas court that this statute as to the character of the ballots was mandatory, so that the local option election was void where the ballots did not have the words "Official Ballot" thereon, and two ballots were given to each voter marked, respectively, "For Prohibition" and "Against Prohibition." The court quotes with approval from State v. Connor, 86 Tex. 133, 23 S. W. 1103, which was decided upon another statute which provided that ballots not numbered in a certain way should not be counted, as follows:

"It is unnecessary to discuss the difference between directory and mandatory statutes. The law commands that a number shall be written on the ballot, and forbids those not numbered to be counted. Taking the two articles together, and especially in connection with section 4, article 6, of the Constitution, there can be no doubt that they are mandatory. 'A clause is directory when the provision contains mere matter of direction and no more; but not so when * * * followed by words of positive prohibition.' Bladen v. Phila., 60 Pa. 466; Pearse v. Morrice, 2 Ad. & El. 96. Prohibitory words can rarely, if ever, be directory. There is but one way to obey the command 'thou shalt not,' which is to abstain altogether from doing the act forbidden."

In Bowers v. Smith, 111 Mo. 45, 20 S. W. 101, 16 L. R. A. 754, 33 Am. St. Rep. 491, certain irregularities occurred in an election, and the court held that they were

not sufficient to invalidate the election. In the discussion, however, the court uses the following language:

"If the law itself declares a specified irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. Ledbetter v. Hall (1876) 62 Mo. 442. In the absence of such declaration, the judiciary endeavor, as best they may, to discern whether the deviation from the prescribed forms of law had, or had not, so vital an influence on the proceedings as probably prevented a free and full expression of the popular will. If it had, the irregularity is held to vitiate the entire return; otherwise it is considered immaterial."

It is to be observed in regard to this case that the Missouri statute, at least so far as we are able to ascertain from the case, contains no words prohibiting the casting, counting, and canvassing of the votes.

In People v. Rinehart, 161 Mich. 585, 125 N. W. 704, the statute provided that one of the inspectors of election should write his initials in ink on the lower left-hand corner of the back of each of the ballots, "but not upon the perforated corner." Under a former statute the Michigan court held that the votes which were not properly indorsed upon the proper corner should be counted, but the court points out that shortly after that decision (Horning v. Board of Canvassers of Saginaw County, 119 Mich. 51 77 N. W. 446) the Legislature amended the act by expressly prohibiting the use of the perforated corner of the ballot for initials. In view of that state of the legislation and holdings, the provision above quoted was held to be mandatory. The court further holds that such a requirement of the statutes does not render it unconstitutional as depriving the individual voter of the elective franchise.

In Horsefall v. School District, 143 Mo. App. 541, 128 S. W. 33, the ballots were not in the form prescribed by the statute, in that they read, "For the Loan, Yes," "For the Loan, No," while the form prescribed by the statute was "For the Loan" and "Against the Loan." The court held the election valid, and announced as the

general rule in Missouri that when a statute expressly
declares any particular act to be essential to the validity
of an election, then the act must be performed in the
manner provided or the election will be void; also that if
the statute provides specifically that a ballot not in a
prescribed form shall not be counted, then the provision
is mandatory, and the courts will enforce it; but if the
statute merely provides that certain things shall be done
and does not prescribe what result shall follow if these
things are not done, then the provision is directory mere-
ly. The court says that the final test as to the legality
of either the election or the ballot in the later case is
whether or not the voters have been given an opportun-
ity to express and have fairly expressed their will. If
they have, the election will be upheld, or the ballot count-
ed, as the case may be.

In Cross v. Keathley, 119 Tenn. 567, 105 S. W. 854,
the statute of Tennessee provided that it should not be
lawful to print or place any pictures, sign, color, mark,
notice, or insignia on any ballot, and provided that any
ballot containing such characters found in the ballot box
should not be counted, but should be treated as invalid.
The court held that such ballots could not be counted, and
that the statute was mandatory.

In People ex rel. Nichols v. Board of County Canvass-
ers, 129 N. Y. 395, 29 N. E. 327, 14 L. R. A. 624, the
statute provided that ballots should be indorsed in a cer-
tain way, and that no inspector of election should de-
posit in the ballot box, or permit any other person to de-
posit in the ballot box, on election day any ballot which
was not properly indorsed and numbered. This pro-
vision was violated, but under the statute providing that
"no ballot that has not the printed official indorsement
shall be counted" the court held that the statute was
mandatory, and that the votes should not be counted.

In Cole v. Tucker, 164 Mass. 486, 41 N. E. 681, 29 L.
R. A. 668, the statute of Massachusetts required the use

of an official ballot and a voter offered to vote an unofficial ballot. The court held that the vote was properly rejected, and that the statute prohibiting their use was within the legislative power under the Constitution granting the elective franchise.

In Moyer v. Van De Vanter, 12 Wash. 377, 41 Pac. 60, 29 L. R. A. 670, 50 Am. St. Rep. 900, it was held, under the constitutional provision providing that persons possessing certain qualifications "shall be entitled to vote at all elections," and "all elections shall be by ballot," the Legislature shall provide for such method of voting as will secure to every elector absolute secrecy in preparing and depositing his ballot. It was held that their statute which provided, "In the canvass of the votes any ballot which is not endorsed, as provided in this chapter, by the official stamp and initials, shall be void, and shall not be counted," was unconstitutional as impairing the elective franchise. This case is out of line with the current of authority.

In State v. Anderson, 100 Wis. 523, 76 N. W. 482, 42 L. R. A. 239, the statute provided that on the official ballot the name of a candidate should appear once, and under the party designation of the party first nominating the candidate. The petitioner sought mandamus to compel the printing of his name under the designation of the People's party as well as under that of the Democratic party. On the return of the writ, it was quashed, and the petitioner appealed to the Supreme Court. The provisions of the statute were held to be mandatory, and the judgment was affirmed.

In State v. McElroy, 44 La. Ann. 796, 11 South. 133, 16 L. R. A. 278, 32 Am. St. Rep. 355, a statute which provided, referring to ballots, "it shall be printed," was held to be mandatory.

In Taylor v. Bleakley, 55 Kan. 1, 39 Pac. 1045, 28 L. R. A. 683, 49 Am. St. Rep. 233, under a statute which

provided, "if the voter fails to mark the ballot as required by other sections of this act, his ballot shall not be counted for such office," it was held that the statute was mandatory.

In Bladen v. Phila., 60 Pa. 464 (not an election case), the court quotes from the English case of Pearse v. Morrice, 2 Ad. & El., 96, as follows:

"A clause is directory  *   *   *   when the provisions contain mere matter of direction and no more; but not so when they are followed by words of positive prohibition."

See, also, 2 Lewis' Suth. Stat. Con. § 633, for a collection of principles extracted from the cases as to when statutes are mandatory or directory.

In Stayton v. Hulings, 7 Ind. 144 (not an election case, but one involving the question of the right of appeal upon filing a certain kind of affidavit), the court says:

"When a statute is merely directory, a thing omitted to be done at the proper time may be allowed afterwards [citing cases]. But where a statute expressly prohibits a thing, until another has been done, the prohibition cannot be disregarded without judicial legislation."

Counsel for appellee cited in the original brief the following cases and text-writers:

Cooley's Con. Lim. (7th Ed.) 907:

"All regulations of the elective franchise, however, must be reasonable, uniform, and impartial; they must not have for their purpose directly or indirectly to deny or abridge the constitutional right of citizens to vote, or unnecessarily to impede its exercise; if they do, they must be declared void."

"The system of ballot voting rests upon the idea that every elector is to be entirely at liberty to vote for whom he pleases and with what party he pleases, and that no one is to have the right, or be in position, to question his independent action, either then or at any subsequent time." Id. 912.

"A great constitutional privilege—the highest under the government—is not to be taken away on a mere technicality, but the most liberal intendment should be made in support of

JANUARY TERM, 1919                    191

State ex rel. Read v. Crist, 25 N. M. 175.

the elector's action wherever the application of the common-
sense rules which are applied in other cases will enable us to
understand and render it effectual." Id. 920.

See also, Id. 929, 940.

They cite McCrary on Elections (4th Ed.) § 126, to
the general effect that the Legislature, under color of reg-
ulating the mode of exercising the elective franchise,
must not injuriously restrain the right itself, and section
133 on the subject of registration being reasonable. They
also cite 9 R. C. L. 982, to the effect that regulations of
the elective franchise must be reasonable, uniform, and
impartial and that otherwise they will be held unconsti-
tutional.

These are but general expressions which will find
ready assent of course in all courts, but they throw no
light upon the application of the principles announced.

White v. Multnomah County, 13 Or. 317, 10 Pac. 484,
57 Am. Rep. 20, is cited. This case was one where the
Oregon court under the constitutional provision which
prescribed in detail the qualifications of electors, and
provided that all such electors should be entitled to vote
at all elections authorized by law, held that a statute
which required previous registry as a pre-requisite to the
right to vote was ipso facto void. This doctrine is pro-
nounced to be unsound by Judge Cooley in Cooley's Con.
Lim. p. 906, and Mr. McCrary in McCrary on Elections,
§§ 130, 131, 132, shows that the holding in the Oregon
case is unsound both upon reason and weight of author-
ity. The White Case has no special application to the
facts in this case.

In Capen v. Foster, 12 Pick. (Mass.) 485, 23 Am. Dec.
632, the question in the case was whether a registration
act in Massachusetts was a reasonable regulation of the
right of a citizen to vote, and it was held that it was.
This is rather contrary to the claims of the appellee than
otherwise.

In Monroe et al. v. Collins, 17 Ohio St. 665, the question was as to whether a statute providing that clerks and judges of election shall not be liable for damages for rejecting the votes of persons having a visible admixture of African blood was valid, or whether it violated the constitutional provision guaranteeing the right to suffrage to white male citizens. It had from early times been held in Ohio that a colored man having more white than black blood was a white man, and the act which was challenged in that case went into great detail as to the examination to which he might be subjected by the election judges before he was allowed to vote. It was held that the act was so onerous as to amount to a practical deprivation of the right to vote, and was therefore held to be unconstitutional. This is undoubtedly correct.

In Attorney General v. Detroit, 78 Mich. 545, 44 N. W. 388, 7 L. R. A. 99, 18 Am. St. Rep. 458, the Constitution required a residence in the town or ward of 10 days only as a condition of voting, and the statute which required registration on a day more than 10 days before election was held to be unconstitutional and void. The decision was, of course, correct, because this amounted to deprivation of the right to vote.

In Morris v. Powell, 125 Ind. 281, 25 N. E. 221, 9 L. R. A. 326, the Constitution of Indiana required a residence of 30 days before election. A statute was passed which required registration 90 days before the election, and the statute was, for that reason, held to be unconstitutional, as requiring a qualification of the voter which was not authorized by the Constitution. Other objections were made to the act. This decision is undoubtedly correct, as the statute deprived the voter of a constitutional right.

In McCafferty v. Guyer, 59 Pa. 109, the Constitution defined the qualifications of voters, and the Legislature passed an act disqualifying deserters, and the Pennsyl-

vania court held that the act was unconstitutional by a divided court, Agnew, C. J., dissenting.

Appellee cites the following cases to show that our statute is not mandatory:

Peabody v. Burch, 75 Kan. 543, 89 Pac. 1016, 12 Ann. Cas. 719, is much relied upon. The statute in Kansas provided that all nominations made and certified in accordance with the provisions of the act, and none other, should be printed on the official ballot. Other names were printed on the official ballot. . The statute further provided that no ballots other than those provided, printed, and endorsed in accordance with the provisions of the act should be delivered to a voter, deposited in a ballot box, or counted. The court held that, although the provisions of the statute were mandatory in regard to the preparation of the official ballot, and although the statute provided that such a ballot should not be delivered to a voter, deposited in a ballot box, or counted, the will of the voters expressed by means thereof could not on that account be disregarded.

It is to be observed in regard to this case that the ballots emanated from the proper source, and the vice in them consisted in a violation by the officer charged with their preparation of the mandatory provisions of the statute. The court may well have held that in such case the negligence, incompetency, or dishonesty of the officials should not deprive the voter of his vote, but the ballots were prepared by the proper officer and furnished to the voter, and in this particular this case differs from the case at bar, because here the ballots were spurious, and emanated from an unofficial source. The argument of the Kansas court is to the effect simply that the Legislature never intended that no ballot should, under any circumstances, be counted, unless in its preparation every requirement of the statute had been fully met.

People v. Wood, 148 N. Y. 142, 42 N. E. 536, is cited and relied upon by the Kansas court in the Peabody Case.

In the New York case the person whose duty it was to prepare the official blanket ballot inserted and printed in the column of a local county party, which had made local nominations only, together with the names of the local candidates it had nominated, the names of candidates for state and judicial offices who had been nominated by the party of which the local party was a faction. These ballots were furnished by the proper officials to the electors, and were deposited and counted. It was held that while the action of the clerk was unauthorized and without right, it was of little effect, and did not disfranchise qualified and innocent voters who had used the official ballots so furnished.

In that case it will be observed that the ballots were the official ballots, printed by the county clerk, whose duty it was under the law to prepare, print, and distribute them. The irregularity consisted in inserting names upon the ballots not authorized. In this particular it differs entirely from the case at bar, because it appears here that the ballot was a spurious one, not emanating from an official source. The court considers the distinction and says:

"It is impossible to suppose that the Legislature used the word 'provided,' as synonymous with prepared, so as to visit upon the voters a forfeiture of the franchise if an official should make any departure in preparing the ballot from the strict authority conferred upon him."

In Taylor v. Taylor et al., 10 Minn. 107, (Gil. 81), the judges and clerks of election did not take and subscribe the oath of affirmation required by law; no lists of the qualified electors of the election districts were kept, and none transmitted to the auditor of the county, as required by law; and in one township one judge of election was at the same time a candidate for the office of representative in the state Legislature. It is clearly pointed out that the statute in Minnesota at that time covered the case exactly in providing that no convassing board of the county should refuse to include any returns in their estimate of votes for any informality in holding

any election or making returns thereof. The statute contained no provision that the vote should not be counted in case of irregularities, and the court, of course, held that the election was valid.

In Ex parte White, 33 Tex. Cr. R. 594, 28 S. W. 542, in violation of a statute which provided that in incorporated cities each ward shall constitute a voting precinct, the commissioners laid off election precincts from the courthouse square, the courthouse not being included in any of them. The votes were cast, as had been customary, in different rooms of the courthouse. It was held that a provision of the Constitution that electors should vote in the precinct of their residence did not invalidate the election. The court held that, taking into consideration the object of the constitutional provision to require voters to vote in the precinct where he resided, and there being no prohibitory words in the Constitution, the election was not invalidated.

McCrary on Elections, § 228, is cited to the general proposition that those provisions of the statute which effect the time and place of elections and the legal qualifications of the elector are generally of the substance of the election, while those touching the record, return of the legal votes received, and the mode and manner of conducting the mere details of the election are directory. This is nothing more than simply a general proposition which is everywhere recognized.

Duncan v. Shenk, 109 Ind. 26, 9 N. E. 690, is cited to the general proposition that election laws are to be liberally construed when necessary to reach a substantially correct result, and to that end their provisions will, to every reasonable extent, be treated as directory rather than mandatory.

In Town of Grove v. Haskell, 24 Okl. 707, 104 Pac. 56, a notice of a county seat election was not posted the required length of time, and the Oklahoma court held that, in the absence of a showing that the electors of the

county did not in fact have actual knowledge of the election, or that a different result would have been reached had the required notice been given, the election would not be declared void. Certain legal requirements were not complied with by those charged with the duty of preparing and furnishing the ballots at the election. The court held in accordance with the Kansas case (75 Kan. 543, 89 Pac. 1016, 12 Ann. Cas. 719) that the election was not invalidated on account of such defects in the ballots.

In Lindstrom v. Board, 94 Mich. 467, 54 N. W. 280, 19 L. R. A. 171, a statute avoided all ballots which should bear any distinguishing mark or mutilation, and the court held that the statute was intended to prevent voters marking the individual ballot which they cast in such manner as to distinguish it, and that the fact that the election officers had printed upon the ticket a vignette not provided for did not disfranchise the voters. The general doctrine is announced that election laws will not be held so far mandatory as that a departure therefrom will result in disfranchisement of the electors, except in cases where the legislative intent that such departure shall have that effect is clearly and unequivocally expressed. This doctrine is of course correct, but our statute is necessarily mandatory from the language used.

In Boyd v. Mills, 53 Kan. 594, 37 Pac. 16, 25 L. R. A. 486, 42 Am. St. Rep. 306, the election officers were furnished by the county clerk with official ballots printed on white paper, and also with sample ballots printed on colored paper in a separate package, and by mistake the sample ballots were used by all the voters of that township, and the official ballots on white paper were all returned unused by the judges of election, and the election was conducted otherwise regularly in all respects, and all of the ballots used by the electors of all parties were of the same color. It was held that such ballots were rightfully counted. The statute required the ballots to be printed on white paper, but the court held that the votes on colored paper were properly counted. The

court states that the statute does not provide that a ballot printed on colored paper should not be counted, and for that reason the decision is undoubtedly correct. There is a clause in the Kansas statute that "none but ballots provided in accordance with the provision of this act shall be counted."

In Parvin v. Wimberg, 130 Ind. 561, 30 N. E. 790, 15 L. R. A. 755, 30 Am. St. Rep. 254, the court states the general rule to be in the consideration of election laws that if a statute expressly declares any particular act to be essential, or that its omission shall render the election void, the courts will enforce it, whether it refers to the merits or affects the result of the election or not; but, if the statute simply provides that certain things shall be done, and does not declare that their performance shall be essential, they will regard it as mandatory if they affect the merits of the election, and directory only if they do not affect the merits. This case does not support the contention of the respondent.

In Harrington v. Crichton, 53 Mont. 388, 164 Pac. 537, the statute required the judges to stamp on the back of the ballot near the top the designation "Official Ballot," and the clerk was to enter on the poll lists the name of such elector and the number of the stub attached to the ballot. The voter thereupon filled out the ballot and returned it to the judges in charge of the ballot box, who were thereupon to remove the stub therefrom and, without exposing any part of the face of the ballot, to deposit the ballot in the proper box. The statute further provided that any ballot which was not indorsed by the official stamp was to be void, and must not be counted. The election officers made a mistake in the place upon the ballot where they stamped it, so that even after the stub had been removed the number of the ballot still remained, thereby destroying the secrecy of the ballot. The court relies upon Moyer v. Van De Vanter, 12 Wash. 377, 41 Pac. 60, 29 L. R. A. 670, 50 Am. St. Rep. 900, heretofore referred to, and which has been pointed out as being contrary to the current of authority. The sub-

stance of the decision is that the mandatory provisions of the statute will be disregarded in behalf of the other principle, to the effect that the elective franchise should not be interfered with, and because in this instance the stamp put upon the ballot was nearly in the correct position required by the statute, and the voter might easily have been deceived by the appearance of the ballot itself.

In McGrane v. County of Nez Perce, 18 Idaho, 714, 112 Pac. 312, 32 L. R. A. (N. S.) 730, Ann. Cas. 1912A, 165, the statute provided that no ballot must be ·used or counted at any election except the legal ballot printed by the county auditor and distributed by the distributing clerk within the polling place. And no ticket must be distributed by the distributing clerk or permitted to be used by the election officers which has any mark or thing on the back or outside thereof whereby it might be distinguished from any other ballot legally used on the same day. The auditor who furnished the ticket made the mistake of numbering the ballots, and the contention was made that this invalidated the same. It was held by the court that this did not invalidate the ballots. It is to be observed that the provision against counting the vote was directed against each ballot which did not come from the proper custody, and was not applied to any irregularity in the action of the auditor in printing the tickets.

Gilleland v. Schuyler, 9 Kan. 569. The irregularities were in the conduct of the election and place. Held, not to vitiate the election. There was no prohibition in the statute.

Parker v. Orr, 158 Ill. 609, 41 N. E. 1002, 30 L. R. A. 227, holds the manner of indicating the persons voted for directory. Any distinguishing mark so as to destroy the secrecy would invalidate the ballot.

Kirk v. Rhoades, 46 Cal. 405, 406. Held, a ballot cast which differs from requirements in matters over which

the elector has no control, such as size of ballot, kind of paper, or character of type, must be counted. The statute provided the size of tickets and the kind of paper and type. The decision is rested upon the doctrine that as to those things of which the voter has no control he is not responsible, and the vote must be counted, but as to those things in his control such as not marking them, a strict compliance with requirements must be had or he loses vote.

The statute in that case is directed against marking a ballot by the voter, in which case it is not to be counted, but it did not provide that irregularities of the officials should invalidate the ballot.

In State v. Bernholtz, 106 Iowa, 157, 76 N. W. 662, the statute provided that no ballot delivered by proper officer to voter should be rejected because of irregularities. Another section prohibited any but ballots provided in accordance with the chapter from being counted. The recorder was the authorized officer to prepare the ballots, but they were prepared and furnished to the election officers by the mayor and counsel. Held, of course, that the ballots must be counted, and the prohibition was confined to the voter, that is, he could not, under the statute, choose any ballot and have it counted, but must take one from the proper official, viz. election official. The court refers to State v. Smith, 94 Iowa, 616, 63 N. W. 453, and states that under the statute as it then existed the election would be illegal.

We have made this somewhat overextended, perhaps, examination and review of the cases, and we have done so by reason of the importance of the question, which concerns the elective franchise, which is, as has been heretofore said, the highest right of the citizen. The voter should not lightly be deprived of his right, nor should the successful candidate suffer, if by any reasonable interpretation of the laws governing elections it can be prevented. On the other hand it is probably better that individual voters and candidates should suffer

in a given instance than that the doors to fraud and imposition may open and the secrecy and purity and security of elections be destroyed. We feel confident, however, that the practical consensus of opinion is that under a constitutional provision like ours, which provides in section 1 of article 7 that "the Legislature shall have power to require the registration of the qualified electors as a requisite for voting, and shall regulate the manner, time and place of voting. The Legislature shall enact such laws as will secure the secrecy of the ballot, the purity of elections and guard against the abuse of elective franchise"—the Legislature has power to provide, as it did provide by the section of the statute heretofore set out, that only official ballots emanating from a proper official source should be cast, counted, or canvassed. That the statute is mandatory and requires us to enforce it without interpolation and without resort to subtle and unsound methods of interpretation in order to save the voter and the candidate from defeat must be admitted by all. It follows that the votes questioned were illegal votes, and could not be cast, counted, or canvassed, which results in the success of the relator and the defeat of the respondent.

For the reasons stated, the cause will be reversed and remanded to the district court, with instructions to enter judgment of ouster against the respondent; and it is so ordered.

LEAHY and HICKEY, District Judges, concur.